**ROYAL MACCABEES LIFE INSURANCE COMPANY,**
Appellant,

v.

**Vicki JAMES and the City of Mesquite, Appellees.**

No. 05–01–01372–CV.

Court of Appeals of Texas, Dallas.

May 21, 2004.

Leonard A. Epstein, Newman, Davenport & Epstein, P.C., Dallas, for Appellant.

Deanne C. Ayers, Colleyville, for Appellee.

Before Justices JAMES, WRIGHT, and RICHTER.

## OPINION ON REHEARING

Opinion By Justice WRIGHT.

Before us are three motions: (1) appellant's April 24 motion for rehearing; (2) appellees' May 2, 2003 motion for en banc consideration; and (3) appellees' May 2, 2003 motion for rehearing. We deny appellees' motion for en banc consideration. *See* TEX.R.APP. P. 41. We deny appellant's motion for rehearing. We grant appellees' motion for rehearing. We withdraw the opinion and vacate the judgment of April 10, 2003. The following is now the opinion of the Court.

Royal Maccabees Life Insurance Company appeals a jury verdict and judgment in favor of Vicki James and the City of Mesquite. In sixteen points of error, Royal Maccabees complains of the legal and factual sufficiency of the evidence to support the jury's findings; asserts there was

no breach of contract or breach of the duty of good faith and fair dealing; complains of error in the award of damages, attorneys' fees, and costs; asserts error in the jury charge; and complains of the admission of the testimony of plaintiffs' expert witness. We affirm in part and reverse and remand in part. We sustain Royal Maccabee's third point of error complaining of the award of mental anguish damages and remand that issue to the trial court for proceedings consistent with this opinion. In all other respects, the trial court's judgment is affirmed.

## BACKGROUND

Vicki James, plaintiff/appellee, is the surviving spouse of Donnie James, who died on June 5, 1998. Donnie James was employed as a police officer for plaintiff/appellee City of Mesquite. This dispute arises out of a group life insurance policy issued by appellant Royal Maccabees for City of Mesquite employees, including Donnie James. Under this policy, an eligible employee could elect coverage in incremental amounts up to $100,000. Appellees contend Donnie James was eligible for, elected, and paid premiums for $100,000 in benefits. There is no dispute between the parties as to the first $50,000 in benefits. Royal Maccabees paid a total of $50,000 ($25,000 to plaintiff Vicki James and $25,000 to her daughter Julie James) after Donnie James's death.[1] The lawsuit and trial arose out of Royal Maccabees's denial of the additional $50,000 in benefits for which Donnie James had paid premiums (through deductions from his paycheck) for four years and ten months prior to his death.

Many of the facts leading up to Royal Maccabees's denial are not disputed. The insurance policy was selected by the City of Mesquite and was in place at the time of Donnie James's death. Donnie James filled out and submitted an application for the disputed benefits. He also filled out and submitted authorization for his employer to withhold premium payments from his paycheck for the disputed benefits. Those premium payments, lumped with payments from other City of Mesquite employees, were submitted to Royal Maccabees. It is undisputed that Royal Maccabees received the payments each and every month for a period of four years and ten months. However, Royal Maccabees never sent a letter approving the disputed benefits. Royal Maccabees paid the first $50,000 of benefits to Donnie James's beneficiaries and denied payment of the remaining $50,000 claimed. After Donnie James's death, Royal Maccabees refunded the premiums it had collected over a four-year period on the claim denied.

The parties also offered evidence on a number of disputed facts. While Royal Maccabees contended it had requested additional medical information about Donnie James from a doctor, but had received no response, the custodian of records for that doctor testified no such requests could be found in the doctor's files. Further, while Royal Maccabees offered a copy of an unsigned letter purportedly sent to the City of Mesquite disapproving Donnie James's application for lack of requested information, appellees offered testimony that no such letter was in the City's files. Further, appellees offered the testimony of Thomas Pinho, the Royal Maccabees employee whose name appeared as signatory on the unsigned letter. Mr. Pinho testified he did not recall writing the letter and

---

1. There is also no dispute between the parties regarding $89,086.53 in life insurance benefits (two times Donnie James's salary) paid by Royal Maccabees under a City of Mesquite policy after Donnie James's death.

would not have written such a letter as part of his employment duties at the time. Finally, appellees offered testimony of representations by Royal Maccabees that eligible full-time employees (including Donnie James) would be covered under the supplemental life insurance policy for amounts over $50,000 without written approval or review of evidence of insurability by Royal Maccabees. Royal Maccabees denied any such representations were made.

At trial, the jury found Royal Maccabees breached the contract, violated the Deceptive Trade Practices–Consumer Protection Act,[2] violated the Insurance Code, breached its duty of good faith and fair dealing, and committed fraud. The jury also found Royal Maccabees timely denied the insurance claim and conducted a reasonable investigation. The jury answered "no" to questions relating to the liability of Charles Carter,[3] Royal Maccabees's agent, for deceptive acts or practices or misrepresentations. The jury also found Royal Maccabees acted knowingly, and awarded punitive damages after a bifurcated proceeding. The trial court entered judgment in the amount of $665,450.25, which amount included insurance benefits, mental anguish damages, damages for violation of Texas Insurance Code article 21.55, punitive damages, attorneys' fees, and interest.

STANDARDS OF REVIEW

An appellant attacking the legal sufficiency of an adverse finding on an issue on which he did not have the burden of proof must demonstrate on appeal that there is no evidence to support the adverse finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983). In conducting a no evidence review, we consider only the evidence and inferences that tend to support the finding and disregard all evidence and inferences to the contrary. *Weirich v. Weirich*, 833 S.W.2d 942, 945 (Tex.1992). If there is more than a scintilla of evidence to support the finding, we uphold the judgment. *Sutton v. Hisaw & Assocs. Gen. Contractors, Inc.*, 65 S.W.3d 281, 284 (Tex.App.-Dallas 2001, pet. denied). In contrast, when we review a challenge to the factual sufficiency of the evidence, we consider all the evidence. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex.1989). We set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

The construction of a contract is a question of law for the court. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983); *Edwards v. Lone Star Gas Co., a Div. of Enserch Corp.*, 782 S.W.2d 840, 841 (Tex. 1990). The general rules of contract construction govern insurance policy interpretation. *Tex. Farmers Ins. Co. v. Murphy*,

2. Appellees' claims were based upon the Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM.CODE ANN. § 17.41 et seq. (Vernon 2002 and Supp.2004) ("DTPA") and the Insurance Code, TEX. INS.CODE ANN. ARTS. 21.21 (Vernon 1981 and Supp.2004) and 21.55 (Vernon Supp.2004).

3. Carter was added as a party defendant in the Plaintiffs' Second Amended Original Petition filed on November 30, 1999. Carter died on February 16, 2000. On April 28, 2000, the trial court entered an Order Granting Issu-

ance and Service of Scire Facias, and the Estate of Charles Carter by and through the Executor Charles Card became a party. The estate remained a party through trial, and issues were submitted to the jury on Carter's liability. The jury found in favor of Carter on those issues. The trial court's final judgment dated June 27, 2000 orders that plaintiffs take nothing against Carter and his estate. No party has appealed that portion of the judgment.

996 S.W.2d 873, 879 (Tex.1999); *State Farm Life Ins. Co. v. Beaston,* 907 S.W.2d 430, 433 (Tex.1995). For example, when the provisions of a contract appear to conflict, we should attempt to harmonize the two provisions. *See Edlund v. Bounds,* 842 S.W.2d 719, 726 (Tex.App.-Dallas 1992, writ denied) (when provisions of contract appear to conflict, they should be harmonized if possible to reflect intentions of parties, so entire agreement can be given effect). We should assume the parties to a contract intended every clause to have some effect; we cannot strike down any portion of a contract absent irreconcilable conflict. *See Edlund,* 842 S.W.2d at 726. A specialized industry term may require extrinsic evidence of the commonly understood meaning of that term within the specialized industry. *Mescalero Energy, Inc. v. Underwriters Indemnity General Agency, Inc.,* 56 S.W.3d 313, 320 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). Once a contract is found to be ambiguous, the interpretation of the contract becomes a fact issue. *Coker,* 650 S.W.2d at 394. Extrinsic evidence is admissible to determine the meaning of an ambiguous contract. *Robinson v. Robinson,* 961 S.W.2d 292, 298 (Tex.App.-Houston [1st Dist.] 1997, no pet.)

 For insurance policies in particular, however, when ambiguous policy terms permit more than one interpretation, we construe the policy against the insurer. *See State Farm Fire & Cas. Co. v. Vaughan,* 968 S.W.2d 931, 933 (Tex. 1998); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.,* 811 S.W.2d 552, 555 (Tex. 1991). This is so especially when the policy terms exclude or limit coverage. *See Vaughan,* 968 S.W.2d at 933. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was en-

tered. *Columbia Gas Transmission Corp. v. New Ulm Gas., Ltd.,* 940 S.W.2d 587, 589 (Tex.1996). A contract is unambiguous if it can be given a definite or certain legal meaning. *Id.* An ambiguity does not arise, however, simply because the parties advance conflicting interpretations of the policy. *Columbia Gas Transmission Corp.,* 940 S.W.2d at 589. But if the insurance policy is subject to one or more reasonable interpretations, it is ambiguous and the interpretation that most favors coverage for the insured will be adopted. *Nat'l Union Fire Ins. Co.,* 811 S.W.2d at 555.

BREACH OF CONTRACT

In its first point of error, Royal Maccabees asserts the trial court erred in granting judgment on the breach of contract claim, and argues the evidence was legally and factually insufficient to support the jury's finding.

 In our original opinion, we concluded that neither party urged ambiguity at trial. Upon further review of the record, however, we conclude that the trial court impliedly found that the policy was ambiguous and that the policy's interpretation was presented to and determined by the jury.

Initially, we note that appellees pleaded the terms of the insurance policy were ambiguous. Royal Maccabees moved for summary judgment on the ground that, under the terms of the policy, there was no coverage as a matter of law. The trial court denied the motion for summary judgment. In denying the motion, the trial court impliedly found that the policy was ambiguous. *See Davis v. Shanks,* 911 S.W.2d 390, 393 (Tex.App.-Texarkana 1994), *rev'd on other grounds,* 898 S.W.2d 285 (Tex.1995) (by granting summary judgment in favor of beneficiary that testator did not convey stocks as part of "con-

tents of home," the trial court implicitly found the will was unambigous).

The trial court's implied finding of ambiguity is further evidenced by the submission of the breach of contract question to the jury. *See Exxon Corp. v. West Tex. Gathering Co.*, 868 S.W.2d 299, 302 (Tex. 1993); *Phillips Petroleum Co. v. Bowden*, 108 S.W.3d 385, 397 (Tex.App.-Houston [14th Dist.] 2003, no pet.). The breach of contract question required the jury to determine on the basis of extrinsic evidence the proper interpretation of the policy. *Id.* The jury affirmatively found that Royal Maccabees did not meet its obligations under the policy. In reaching this answer, the jury impliedly found that Donnie James was covered by the supplemental insurance policy. At trial, the trial court excluded Royal Maccabees's expert witnesses for failure to timely designate. Royal Maccabees also impliedly agrees there is an ambiguity, inasmuch as they complained of the exclusion of its expert witnesses who would have testified to the policy's meaning. In its motion for new trial, Royal Maccabees recognized that if such evidence had been admitted, "the jury may have concluded that the Defendant did not breach the agreement." For these reasons, we conclude the trial court impliedly determined the policy was ambiguous.

■■■ Assuming the trial court did not make the ambiguity determination, however, this Court may determine ambiguity as a matter of law for the first time on appeal. *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444–46 (Tex.1993). We will now focus on the policy's terms and decide whether it is ambiguous as a matter of law.

Appellees maintain Donnie James was covered for the entire $100,000 benefit upon submitting the required form and payment of premium. They urge several arguments in support of this conclusion: (1) under the terms of the application form, coverage was in place until the insured was advised in writing of disapproval; (2) Royal Maccabees's agent promised no evidence of insurability would be required for employees who were part of the initial enrollment; (3) Donnie James paid premiums for $100,000 of coverage and was shown on employee rolls submitted to Royal Maccabees to have $100,000 of coverage; (4) the Schedule of Benefits in the policy can be read to mean no evidence of insurability is necessary until an employee has elected more than $100,000 in coverage; (5) Donnie James submitted all evidence of insurability that was requested or required; and (6) the jury found there was coverage under a reasonable interpretation of the policy.

■■■ While there is no question, from the evidence submitted at trial, that Donnie James complied with every obligation he had to submit information to Royal Maccabees, there is also no question that no written approval was ever received from the company. Accordingly, we must now look to the interpretation of the contract. We apply the standard of review as set out above. When presented with conflicting provisions, we will attempt to harmonize the provisions, but must give effect to the entire agreement in doing so, assuming the parties intended every clause to have some effect. *See Edlund*, 842 S.W.2d at 726. Should we be unable to harmonize the provisions—giving effect to all clauses—and we see more than one reasonable interpretation, we will find the contract is ambiguous and adopt the interpretation that most favors coverage for the insured. *See Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555.

As Royal Maccabees argues, the policy sets out a requirement for written approv-

al. The "Requirements as to Good Health" section of the policy provides:

If a Certificateholder is eligible for an amount of life insurance in excess of $50,000, he must submit an individual health application and such other evidence of good health as may be required by the Company. It must be submitted to the Company at its Home Office.

a. If written approval is received from the Company, he will be eligible for the entire life and accidental death and dismemberment coverage for his class shown on the Schedule of Benefits page.

b. If written approval is not received from the Company, he will be eligible for a maximum of $50,000 life insurance coverage.

Notwithstanding the above language, the application form and the schedule of benefits conflict with the above language. Appellees argue the language in the application and schedule of benefits can be interpreted to provide $100,000 coverage for Donnie James without written approval.[4]

The following provision is contained in the application form filled out by the City for the group policy:

8. Any person whose amount of coverage is subject to evidence of insurability shall be insured only for the non-medical portion until such time as such evidence is reviewed by the Company and such person is advised in writing about the Company's approval or disapproval.

The application allows a person to select from the following coverages: Life (basic); Life (supplemental); AD & D 24 Hr.; AD & D Non–Occ.; Dependent Life; Weekly Disability; Medical Conversion; and Other. In our original opinion, the majority concluded that paragraph 8 in the application and the "Good Health" clause could be

reconciled stating, "[p]aragraph 8 in the application addresses a situation where a portion of coverage is subject to evidence of insurability and another portion is not; written approval or disapproval is required only for the portion subject to evidence of insurability." Upon further reflection, we are now of the opinion that the two clauses are not reconcilable. To give effect to this portion of the application, we must distinguish between the terms medical insurance and non-medical insurance. The term "non-medical" is not defined in the policy. Joseph Wilkerson testified as an expert witness for Vicki James. He testified that, within the insurance industry, "non-medical" means life insurance. Wilkerson's testimony as to the meaning of "non-medical" was undisputed. Based on this distinction, a reasonable interpretation of these provisions is as follows: (1) If a person is subject to evidence of insurability requirements, he will only have coverage for life insurance, not weekly disability or medical conversion, until his evidence of insurability is reviewed and he is approved in writing by the company; (2) Donnie James applied only for life insurance which is non-medical insurance; and (3) According to the non-medical clause in the application, even if his evidence of insurability was not reviewed or written approval was not received from the company, he was insured with the life insurance for which he applied. Because reasonable interpretations of these contract provisions show ambiguity in the contract, we adopt the interpretation that most favors coverage for the insured and conclude the trial court did not err in granting judgment on the breach of contract claim. See *Nat'l Union Fire Ins. Co.*, 811 S.W.2d at 555.

The Schedule of Benefits language also arguably demonstrates a conflicting provi-

---

4. As per the terms on the application, the application is a part of the insurance policy.

sion in the contract. The Schedule of Benefits in the policy identifies two classes of employees: Class 01, described as "all eligible full-time employees who submit satisfactory evidence of insurability," and Class 02, described as "all eligible full-time employees who do not submit satisfactory evidence of insurability."[5] For Class 01, the schedule provides "*election* of the following amounts: $10,000; $20,000; $25,000; $50,000; $75,000; $100,000." (emphasis added.) For Class 02, the schedule provides "*election* of the following amounts: $10,000; $20,000; $25,000; $50,000." (emphasis added.) Appellees argue the policy allows every employee a "guaranteed issue" of $50,000 coverage, without written approval and without evidence of insurability. Then, the schedule of benefits allows eligible full-time employees to elect up to $100,000 more in additional coverage if they submit satisfactory evidence of insurability, in addition to the $50,000 "guaranteed issue." For the first $50,000 of this additional election, the "Good Health" clause does not require written approval. Therefore, since Donnie James had only the $50,000 "guaranteed issue" plus the first $50,000 additional election for life insurance only, the "Good Health" clause did not require written approval for any of the $100,000 in coverage claimed by appellees.

While we do not wholly agree with appellees' interpretation of the Schedule of Benefits provision, we do conclude the multiple provisions of the policy can be interpreted in different ways. Further, based on the discussion above, we cannot conclude Royal Maccabees's interpretation would give effect to the *entire* agreement. Accordingly, we conclude there is more than one reasonable interpretation of the contract.

Conflicting provisions are also apparent when reading the sections entitled "Commencement of Coverage" and "Eligibility Requirements." In the application, the Waiting Period is defined as: "Present employees must have completed 0 Days 0 Months." However, the "Commencement of Coverage" section 2(c) states the following:

> **Insurance** on any individual towards which the individual is required to contribute all or part of the premium **will commence:**
>
> a. **On the date on which he becomes eligible** for coverage if his enrollment/beneficiary card and agreement to pay his share of the premiums has been received by the Company prior to that date; or
>
> b. On the date on which the enrollment/beneficiary card and agreement to pay his share of the premiums is signed if it is received by the Company within thirty-one days after the individual becomes eligible for insurance.
>
> c. If he applies for coverage more than thirty-one days after he meets the Waiting Period requirements, an individual health application and such other evidence of good health as may be required by the Company must be submitted by the individual to the Company.
>
> 1. If written approval is received from the Company, he will be eligible for coverage on the date application is approved.

**5.** Another conflict is seen in the schedule of benefits because paragraph 6 of the Benefit Summary lists six classes of supplemental benefits, $10,000 through $100,000 of coverage. The policy as discussed above, however, lists only two classes of benefits.

2. If written approval is not received from the Company, no coverage will be effective.

The policy also has a section titled "Eligibility Requirements." It states eligibility is determined by the waiting period described in the policy and by meeting all of the requirements as to Good Health. The conflict arises between that statement and the one under Commencement of Coverage. Both statements refer to meeting requirements as to Good Health. Although Donnie James appears to fall into a class required to submit information for requirements as to Good Health, Donnie James was an existing employee who had no Waiting Period requirements. Therefore, he did not apply more than thirty-one days after the waiting period. Further, according to the Commencement of Coverage section, Donnie James did not fall into the category of persons required to submit evidence of good health because only if an applicant is applying more than thirty-one days *after* the waiting period must evidence of good health be submitted.

■ Having found more than one interpretation, we may also consider the extraneous evidence to determine the true meaning of the instrument. *See Mescalero Energy, Inc.,* 56 S.W.3d at 319. And in our review of the contract, we look at it as a whole in light of the circumstances present when the contract was entered. *See Columbia Gas Transmission,* 940 S.W.2d at 589. Evidence at trial included a letter written by Charles Carter, senior account representative of Royal Maccabees, that stated "there will be two effective dates of coverage—namely—8–1 and 9–1; any enrollment card dated after 8–31–93 will require Evidence of Insurability." Donnie James's enrollment was dated July 7, 1993. Mr. Carter does not state evidence of insurability is required for any of the enrollment cards prior to September 1, 1993.

■ We do not decide these issues based on waiver or estoppel. We recognize several of appellees' arguments, including Royal Maccabees's acceptance of premiums and the agent's representations, are essentially arguments that by its actions, Royal Maccabees waived or is estopped from asserting the contractual provision requiring written approval. Under Texas law, it has long been established that waiver and estoppel cannot be used to create insurance coverage:

> Whereas waiver and estoppel may operate to avoid forfeiture of a policy and may prevent an insurance company from avoiding payment because of the failure on the part of the insured to comply with some requirement of the policy, waiver and estoppel cannot enlarge the risks covered by a policy and cannot be used to create a new and different contract with respect to the risk covered and the insurance extended.

*Minn. Mut. Life Ins. Co. v. Morse,* 487 S.W.2d 317, 320 (Tex.1972). Thus, acceptance of premiums or other actions by Royal Maccabees that might otherwise indicate waiver of the written approval requirement cannot be used to create coverage. *See, e.g., Boyd v. Travelers Ins. Co.,* 421 S.W.2d 929, 931 (Tex.Civ.App.-Houston [14th Dist.] 1967, writ ref'd n.r.e.) (acceptance of premiums will not constitute waiver of policy provisions so as to create new and different contract with respect to risks covered by group policy).

Notwithstanding this long-established precedent, we have found conflicting provisions in the contract. We attempted to harmonize the provisions, but cannot do so while giving effect to the entire agreement. *See Edlund,* 842 S.W.2d at 726. There is more than one reasonable interpretation of the contract. Longstanding standards of contract interpretation dictate we must resolve ambiguity in favor of the insured.

Accordingly, we hold the trial court did not err in entering the judgment on the breach of contract claim. We overrule Royal Maccabees's first point of error.

### BREACH OF GOOD FAITH AND FAIR DEALING

In its second point of error, Royal Maccabees complains it did not breach any duty of good faith or fair dealing to appellees. Royal Maccabees argues an insurance company cannot be liable for common law bad faith when it denies a claim that was not covered by the policy.

A cause of action for breach of the duty of good faith and fair dealing is established when an insurer has no reasonable basis for denying or delaying payment of a claim, and the insurer knew or should have known that fact. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex.1997) (citing *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex.1988)).

Royal Maccabees accepted premium payments from Donnie James for the supplemental life insurance for over four years. The City routinely sent statements to Royal Maccabees listing the premiums paid and coverages for each of its employees. The City's list always showed Donnie James covered for $100,000. Royal Maccabees alleged that it requested further information from Donnie James's doctor but did not get a response. The custodian of records for the doctor, however, testified that no such request could be found in the doctor's files. Royal Maccabees also claimed that it sent a letter to the City disapproving Donnie James's application for supplemental life insurance. The City had no such letter in its files. Moreover, Thomas Pinho, the Royal Maccabees employee whose name appeared as signatory on the letter, testified that he did not recall writing the letter and that he would not have written such a letter as part of his employment duties at the time.

This disputed testimony constituted both legally and factually sufficient evidence to support the jury finding that Royal Maccabees violated its duty of good faith and fair dealing. Royal Maccabees's second point of error is overruled.

### FRAUD, DTPA, AND INSURANCE CODE VIOLATIONS

In points of error four, seven, and eight, Royal Maccabees challenges the legal and factual sufficiency of the jury's findings of fraud and violations of the DTPA and the Insurance Code.

Appellees' fraud, DTPA, and Article 21.21 claims primarily were based upon Royal Maccabees's alleged misrepresentation that eligible employees (including Donnie James) would be covered under the supplemental life insurance policy for amounts over $50,000 without further approval or review of evidence of insurability by Royal Maccabees.

Appellees claim misrepresentations in the policy itself, including the application. They argue paragraph 8 of the application for the supplemental life insurance policy provides coverage up to $100,000 without further approval or evidence of insurability until Royal Maccabees approves or disapproves the coverage in writing. As noted earlier, appellees' interpretation of paragraph 8 is reasonable.

The jury found that Donnie James was covered for the supplemental benefits under the policy and that Royal Maccabees breached the policy in denying the claim for the supplemental benefits. Based on the terms of the policy, the jury found that appellant made a material misrepresentation to Donnie James. Donnie James relied on this misrepresentation as shown by his payment of premiums for the supplemental coverage for over four years without receiving approval or disapproval of

the coverage in writing prior to his death. We conclude the evidence is both legally and factually sufficient to support the jury's affirmative findings on the fraud, DTPA, and insurance code violations claims. We overrule Royal Maccabees's fourth, seventh, and eighth points of error.

## UNCONSCIONABILITY

■ In its ninth point of error, Royal Maccabees contends the evidence is insufficient to support the jury finding that it engaged in an unconscionable action or course of action that was a producing cause of damage to appellees. "Unconscionable action" was defined for the jury as "an act or practice that, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." This instruction tracks the statutory definition. *See* TEX. BUS. & COM.CODE ANN. § 17.45(5) (Vernon 2002). Royal Maccabees challenges the legal and factual sufficiency of this finding in its ninth point of error.

■ "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of his lack of knowledge and 'that the resulting unfairness was glaringly noticeable, flagrant, complete and unmitigated.'" *Bradford v. Vento*, 48 S.W.3d 749, 760 (Tex.2001) (quoting *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 677 (Tex.1998), and *Chastain v. Koonce*, 700 S.W.2d 579, 583 (Tex.1985)).

As discussed above, as a matter of law, Royal Maccabees failed to comply with the policy. Through the policy, Royal Maccabees misrepresented to Donnie James that he was covered for the supplemental benefits unless Royal Maccabees told him otherwise. There is evidence that Royal Maccabees never informed him or the City that he was not approved for the supplemental benefits. Donnie James relied on this failure of notice and continued to pay his premiums for the supplemental coverage up until his death. Royal Maccabees routinely received rosters from the City confirming the premiums paid by Donnie James and listing his coverage as $100,000. This is sufficient evidence of unconscionable conduct on the part of Royal Maccabees. Because the evidence was legally and factually sufficient to support the jury's finding of unconscionable conduct under the DTPA, we overrule Royal Maccabees's ninth point of error.

## ARTICLE 21.55, INSURANCE CODE

In its twelfth point of error, Royal Maccabees asserts there is legally and factually insufficient evidence to support the jury's finding that it failed to pay or investigate the claim. Article 21.55 establishes procedures for the prompt payment of insurance claims and provides penalties and attorneys' fees where an insurer has not complied with the requirements of the article. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex.2001). Royal Maccabees argues the jury's finding fails in the absence of evidence that it breached the policy. Having determined that Royal Maccabees did breach the policy, its argument has no merit. Accordingly, we overrule Royal Maccabees's twelfth point of error.

## $25,000 POLICY PROCEEDS

The jury awarded Vicki James $25,000 in policy proceeds. Again, Royal Maccabees argues in its eleventh point of error that the award was improper because there is insufficient evidence to show breach of contract, fraud, misrepresentation, or unconscionable conduct. Because we have affirmed the breach of contract and tort findings, Royal Maccabees's argument lacks merit. We overrule Royal Maccabees's eleventh point of error.

## MISCONDUCT COMMITTED KNOWINGLY

In its thirteenth point of error, Royal Maccabees asserts the evidence is legally and factually insufficient to support the jury finding that it knowingly committed misconduct. It argues that because there is legally and factually insufficient evidence to support the misconduct finding, the evidence is also insufficient to support the finding that the misconduct was committed knowingly. Again, because we have determined that the evidence is sufficient to support the jury's findings, appellant's argument has no merit.

Royal Maccabees also asserts that the trial court erred in awarding the $50,000 additional damages because the jury may have improperly based such award on a " 'knowing' breach of contract." This argument is moot because in its judgment the trial court declined to award the $50,000 in additional damages due to the award of punitive damages. We overrule Royal Maccabees's thirteenth point of error.

## PRE-JUDGMENT INTEREST AND COSTS

In its fourteenth point of error, Royal Maccabees asserts the trial court erred in awarding Vicki James pre-judgment interest and court costs. A prevailing party is entitled to pre-judgment interest and court costs. See TEX. FIN.CODE ANN. § 304.001 (Vernon Supp.2004); TEX.R. CIV. P. 131. Royal Maccabees contends it was error to award Vicki James pre-judgment interest and costs because it was error to award judgment in her favor. Royal Maccabees's argument is without merit. Having determined that Royal Maccabees breached its contract with the City, we overrule its fourteenth point of error.

## MENTAL ANGUISH

In its third point of error, Royal Maccabees asserts the evidence is legally and factually insufficient to support the award of mental anguish damages. Royal Maccabees also complains that the trial court erred in submitting, over its timely objection, the mental anguish damages question.

We will first address the legal sufficiency point and determine whether there is more than a scintilla of evidence to support the mental anguish damages award. See Sutton, 65 S.W.3d at 284. To recover mental anguish damages, a plaintiff must introduce direct evidence of the nature, duration, and severity of her mental anguish, thus establishing a substantial disruption in her daily routine. Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex. 1995).

Vicki James testified that she was devastated by Royal Maccabees's denial of the supplemental benefits. She suffered sleeplessness, nausea, and headaches. It became hard for her to get through her daily routine. She felt very insecure about her financial future. Vicki James's sister, Susan Stone, testified that Vicki felt insecure because her husband's ability to take care of his family had been questioned. We conclude this testimony is more than a scintilla of evidence to support the award of mental anguish damages.

We now turn to Royal Maccabees's claim that the jury question on mental anguish damages contained error. We review claims of charge error for an abuse of discretion. Tex. Dep't of Human Servs. v. E.B., 802 S.W.2d 647, 649 (Tex, 1990). Mental anguish damages are not recoverable for a breach of contract. Latham v. Castillo, 972 S.W.2d 66, 72 (Tex.1998). In Crown Life Ins. Co. v. Casteel, 22 S.W.3d 378, 388 (Tex.2000), the supreme court held that it was error to submit a single broad-form liability question that commingles valid and invalid liability grounds. The supreme court extended Casteel to

cover a single broad-form damages question that contains both proper and improper elements of damages. *Harris County v. Smith*, 96 S.W.3d 230, 233–34 (Tex. 2002). Assuming a timely objection, such error is harmful for two reasons. First, it prevents the reviewing court from determining whether the jury's damages were based on an improper element. *Casteel*, 22 S.W.3d at 388. Second, it prevents the appellant from isolating the error and presenting his case on appeal. *Id.*

The trial court charged the jury as follows:

> If you answered "yes" to any one of Questions Nos. 1, 3, 5, 6, 7, 8, or 10 then answer Question No. 12. Otherwise, do not answer same.
>
> QUESTION NO. 12
>
> What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Vicki James for her damages, if any, that resulted from such conduct.
>
> > Answer in dollars and cents, if any, for each of the following separately:
> >
> > 1. The mental anguish suffered in the past by Vicki James as a result of ROYAL MACCABEES'S denial of the claim for supplemental life insurance benefits.
> >
> > Answer: $225,000
> >
> > 2. The mental anguish anticipated to be suffered in the future by Vicki James as a result of ROYAL MACCABEES'S denial of the claim for supplemental life insurance benefits.
> >
> > Answer: $0

Question 12 allowed the jury to assess mental anguish damages if it answered "yes" to question 1. The jury answered "yes" to question 1 which asked whether Royal Maccabees had breached the contract. A jury may not award mental an-

guish damages for a breach of contract. *See Latham*, 972 S.W.2d at 72.

We conclude the trial court erred in overruling Royal Maccabees's objection to question 12. Such error was harmful because it is not possible for this Court to determine that the jury did not improperly consider the breach of contract in deciding to award mental anguish damages and it prevented Royal Maccabees from isolating the error and presenting its case on appeal. *See Harris*, 96 S.W.3d at 234; *Casteel*, 22 S.W.3d at 388. Accordingly, we sustain Royal Maccabees's third point of error with respect to jury charge error and remand the issue to the trial court. Because we are remanding this issue to the trial court, we do not address Royal Maccabees's complaint that the evidence is factually insufficient to support the award of mental anguish damages.

### MALICE

In its fifth point of error, Royal Maccabees contends the evidence is legally and factually insufficient to support the jury's finding of malice.

The Texas Supreme Court has held that punitive damages can be awarded for bad faith only when an insurer was actually aware that its actions involved an extreme risk of serious harm, such as death, grievous physical injury, or financial ruin to its insured and was nevertheless consciously indifferent to its insured's rights, safety, or welfare. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 57 (Tex.1997) (citing *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 22–23 (Tex.1994)).

The City collected the life insurance premiums on a bi-weekly basis. The evidence shows that the City sent a roster with the premium payments listing the name of the insured, amount of premium paid, and the amount of coverage. Royal Maccabees did not verify the accuracy of the premium

payments or the coverages. Royal Maccabees accepted premium payments from Donnie James for four years and ten months. It continued to accept his payments long after it *claims* to have notified the City of its denial of supplemental insurance coverage for Donnie James. Royal Maccabees's behavior demonstrates its conscious indifference to Donnie James's rights. Vicki James, as part of the family's financial planning, assumed her family had the supplemental coverage. We conclude the evidence is sufficient to support the jury's finding that Royal Maccabees acted maliciously.

### EXEMPLARY DAMAGES

■ Royal Maccabees contends in its sixth point of error that the evidence is legally and factually insufficient to support the award of exemplary damages. Appellant also asserts that such award was grossly excessive.

■ An award of exemplary damages rests largely in the discretion of the fact finder and will not be set aside as excessive unless the amount is so large as to indicate that it is the result of passion, prejudice, or corruption, or that the evidence has been disregarded. *Ethicon, Inc. v. Martinez*, 835 S.W.2d 826, 835 (Tex. App.-Austin 1992, writ denied); TEX. CIV. PRAC. & REM.CODE ANN. § 41.010(b) (Vernon Supp.2004). In reviewing an award of exemplary damages, we consider:

(1) the nature of the wrong;

(2) the character of the conduct involved;

(3) the degree of culpability of the wrongdoer;

(4) the situation and sensibilities of the parties concerned;

(5) the extent to which such conduct offends a public sense of justice and propriety;

(6) the net worth of the defendant.

TEX. CIV. PRAC. & REM.CODE ANN. § 41.011 (Vernon 1997).

The jury awarded Vicki James $425,000 in exemplary damages. The trial court reduced that award to $275,000 in accordance with statutory limitations. *See* TEX. CIV. PRAC. & REM.CODE § 41.008 (Vernon Supp.2004). We have upheld the jury's findings on the tort causes of action. This misconduct supports an award of exemplary damages which is largely within the jury's discretion. The testimony showed Royal Maccabees saw nothing wrong with continuing to accept Donnie James's premiums even though it claimed to have sent a letter denying him coverage. The jury heard testimony that Royal Maccabee's net worth was 3.4 billion dollars. We conclude the evidence is legally and factually sufficient to support the exemplary damages award. We overrule Royal Maccabee's sixth point of error.

### ATTORNEY'S FEES

■ In its tenth point of error, Royal Maccabees contends appellees were improperly awarded their attorney's fees. We disagree.

Royal Maccabees asserts the award was error because appellees failed to present evidence on each of the factors as set forth in *Arthur Andersen & Co. v. Perry Equip. Co.*, 945 S.W.2d 812, 817–18 (Tex.1997). In *Arthur Andersen*, the supreme court set forth the following factors to consider in determining attorney's fees:

(1) the time and labor required;

(2) the likelihood that acceptance of the job precluded the attorney from accepting other jobs;

(3) the customary fee in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by either the client or circumstances;

(6) the nature and length of the legal relationship;

(7) the experience, reputation, and ability of the attorney; and

(8) whether the fee is fixed or contingent.

*Id.* This Court has held that it is not mandatory that the record include evidence on *each* of these factors. *Burnside Air Conditioning and Heating, Inc. v. T.S. Young Corp.*, 113 S.W.3d 889 (Tex.App.-Dallas 2003, no pet.). Appellees presented testimony as to the attorney's reputation, the customary fees charged in Dallas County, the amount of time and travel involved over the course of the case. This evidence is sufficient to support the attorney's fees awarded. We overrule Royal Maccabee's tenth point of error.

## TRIAL COURT'S CHARGE

■ Royal Maccabees contends in its fifteenth point of error that the trial court erred in denying its requested jury question. We review charge error for an abuse of discretion. *E.B.*, 802 S.W.2d at 649.

■ Royal Maccabees requested a jury question on whether the City ratified the insurance contract after discovering the truth of the fraudulent misrepresentation. Royal Maccabees contends that if this question had been submitted and if the jury had answered "yes," then the jury's fraud finding would be "vitiated altogether." Ratification requires proof that there was (1) full knowledge of the fraudulent acts or breach at the time of ratification and (2) the other party intentionally chose to ratify the contract in spite of the alleged fraud. *LSR Joint Venture No. 2 v. Callewart*, 837 S.W.2d 693, 699 (Tex.App.-Dallas 1992, writ denied).

The evidence cited by Royal Maccabees does not support submission of the ratification issue. The City's letter addressing the firemen's enrollment in the supplemental life insurance is inapplicable. The City firemen, unlike Donnie James, applied for the supplemental insurance *after* the initial enrollment period. This letter is not evidence that the City was aware of the alleged fraud with respect to Donnie James.

Royal Maccabees also relies on the City's renewal of the policy from August 1998 through August 1999. Review of the policy began prior to Donnie James's death in June of 1998. Following his death, the City made numerous efforts to get Royal Maccabees to pay the supplemental benefits to Vicki James. The City renewed the policy for the final time while in the process of attempting to obtain the supplemental benefits. The City's behavior in renewing the policy while attempting to obtain the supplemental benefits indicates that it was unaware of the fraud. Without knowledge of the fraud, there could be no ratification by the City. Moreover, the City's conduct in contesting the denial of the supplemental benefits demonstrates that it did not *intentionally* ratify the fraudulent conduct.

The trial court did not abuse its discretion in failing to submit Royal Maccabees's requested jury question because the evidence did not support its submission. Accordingly, we overrule Royal Maccabees's fifteenth point of error.

## EXPERT TESTIMONY

■ In its sixteenth point of error, Royal Maccabees asserts the trial court erred in admitting the testimony of Joseph Wilkerson. Specifically, Royal Maccabees asserts that testimony of bad faith insurance practices is not a proper subject of expert testimony.

■ We review rulings on the admissibility of expert testimony for an abuse of discretion. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 558 (Tex. 1995). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). Expert testimony is admissible if it will assist the trier of fact to understand the evidence or to determine a fact in issue. Tex.R. Evid. 702. A witness may be qualified as an expert "by knowledge, skill, experience, training, or education." Tex.R. Evid. 702; *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 726 (Tex.1998) (experience alone may provide a sufficient basis for an expert's opinion in some cases).

■ An expert may offer his opinion on an ultimate issue to be decided by the trier of fact. Tex.R. Evid. 704. Also, an expert may state an opinion on a mixed question of law and fact if the opinion is confined to relevant issues and is based on proper legal concepts. *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 365 (Tex.1987) (proper for expert to opine that the defendant's conduct constituted negligence, gross negligence, and reckless conduct). To be relevant, the expert testimony must be sufficiently tied to the facts of the case so that it will assist the jury in resolving a factual dispute. *Exxon Pipeline Co. v. Zwahr*, 88 S.W.3d 623, 629 (Tex.2002).[6]

We note that Royal Maccabees attempted to have Kenneth We the and Frank Riker testify as to their interpretation of the policy. Vicki James objected on the ground that Royal Maccabees did not designate them as expert witnesses. The trial court sustained the objection.

Wilkerson had forty-eight years' experience in the insurance industry. He is a licensed claims adjuster and a licensed risk manager. He has taught insurance courses at the college level. To maintain his licenses, Wilkerson attends many seminars including some continuing legal education courses. Although most of his career involved casualty insurance, he also handled numerous group health and life claims.

In light of this Court's conclusion that the insurance policy is ambiguous as a matter of law, it was not error for the trial court to permit Wilkerson to testify as to his interpretation of the policy. Wilkerson testified that the conduct of Royal Maccabees constituted bad faith, unfair dealing and fraud and also that it violated various provisions of the insurance code and the deceptive trade practices act. These opinions on mixed questions of law and fact were proper. *See Birchfield*, 747 S.W.2d at 365.

We conclude the trial court did not abuse its discretion in allowing Wilkerson to testify as an expert witness. We over-

6. The cases relied upon by Royal Maccabees are distinguishable and inapplicable to the facts of this case. In *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357 (Tex.2000) (per curiam), the supreme court held that the trial court properly excluded the proposed testimony of a human factors and safety expert because the expert's testimony was within the common knowledge of the jury. In *United Way of San Antonio, Inc. v. Helping Hands Lifeline Foundation, Inc.*, 949 S.W.2d 707, 712–13 (Tex. App.-San Antonio 1997, writ denied), the court of appeals held that the trial court erred in allowing a witness to give a legal conclusion where the trial court had stated that the witness could testify solely as a fact witness. In *Holden v. Weidenfeller*, 929 S.W.2d 124, 134 (Tex.App.-San Antonio 1996, writ denied), the reviewing court affirmed the trial court's ruling excluding expert testimony from an attorney as to the existence of an easement because the witness did not establish greater knowledge and education that the trier of fact, the trial judge.

rule Royal Maccabee's sixteenth point of error.

CONCLUSION

We reverse the award of mental anguish damages and remand that issue to the trial court for proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.