# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-06-00026-CV

Jo Dee Kaspar-Wells, Individually and as Trustee of the Jody Aiello Trust, Appellant

v.

Jodie Mowdy, Appellee

FROM THE COUNTY COURT AT LAW NO. 2 OF WILLIAMSON COUNTY
NO. 05-0564-CC2, HONORABLE TIMOTHY L. WRIGHT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

At issue in this declaratory judgment action is whether a tenant breached a residential property lease. Appellant Jo Dee Kaspar-Wells, the landlord, contends that the trial court erred in denying her request for a declaration that appellee Jodie Mowdy[1] breached her lease by occupying the property with another person and by operating a business from the residence. We affirm in part and reverse in part the judgment of the trial court and remand for further proceedings.

Mowdy originally moved into the property at issue—a house in Georgetown, Texas—during a long-term relationship with Marvin Rau, Kaspar-Wells's grandfather. Upon Rau's death in the summer of 2000, the property passed to Kaspar-Wells and her now-deceased mother, Jody Aiello. On March 17, 2001, Mowdy signed a lease drafted by either Kaspar-

---

[1] After the original lease was signed, Jodie Mowdy married and adopted the surname of her husband, Claude Morrison. To avoid confusion, we will follow the terminology of the lease and other documents filed in this case that refer to her as "Jodie Mowdy."

Wells an Aiello or their attorney.   The short, three-page lease contained the following

provisions that are at issue here:

> **Tenant:**  Jodie Mowdy
>
> . . . .
>
> **Termination Date:**  Date Jodie Mowdy moves out or vacates residence or does not
> pay property taxes or maintain insurance.
>
> **Use:**  Private residence
>
> **Occupants (other than Tenant):**  None

The lease does not elaborate further on the meaning or effect of these provisions.

In addition, it requires Mowdy to maintain the premises, pay property taxes, maintain insurance on

the premises, pay for utility services, and obey all laws and ordinances applicable to the premises.

Mowdy agreed not to assign the lease or sublease any portion of the house without the landlord's

consent.  The lease also states that its terms are the entirety of the parties' agreement, and provides

that its terms may be amended only by a written instrument signed by the landlord and tenant.

The lease is silent as to any consequence or remedy for breach of its terms.[2]

Mowdy married Claude Morrison on January 18, 2004, and he moved into the house.

After learning that Morrison had moved in, Kaspar-Wells filed this suit for declaratory relief.[3]

She sought a declaration that Mowdy breached the lease by allowing Morrison to occupy the house

---

[2]  Interestingly, the lease does not contain a rental provision or lease payment amount.

[3]  There was argument suggesting that the relationship between the parties had soured and that Kaspar-Wells had been seeking to terminate or end the lease for some time before Mowdy married Morrison.  However, no record evidence was actually adduced on this point.

and by operating a business from the house. Kaspar-Wells based the latter request primarily on an assumed name certificate, filed June 21, 2004, listing the house as the business address of Bio Remediation Company, which is owned by Morrison and Mowdy. Kaspar-Wells also asked the trial court to order Mowdy and Morrison to vacate the house. After a bench trial, the trial court denied Kaspar-Wells's request for declaratory relief. In its findings of fact and conclusions of law, the trial court determined that the lease was unambiguous and that Mowdy did not breach it.

On appeal, Kaspar-Wells contends that the trial court erred by failing to declare that Mowdy breached the lease's occupancy and use provisions. She seeks a reversal of the trial court's findings with respect to the alleged breaches of the lease and a remand for further proceedings.

We review findings of fact and conclusions of law according to their substance and not their title. *Morris v. Kohls-York*, 164 S.W.3d 686, 693 (Tex. App.—Austin 2005, pet. dism'd) (citing *Ray v. Farmers' State Bank*, 576 S.W.2d 607, 608 n.1 (Tex. 1979)). When a party attacks the legal sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.* at 242. We review the trial court's legal conclusions de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In this case, the material facts regarding whether someone other than Mowdy occupied the leased

3

property are undisputed. Therefore, we determine the legal issue of how the lease agreement's occupancy provision must be interpreted in light of the undisputed facts. We also review the question of whether Mowdy or Morrison operated a business out of the leased property for legal and factual sufficiency.

Kaspar-Wells first asserts that the trial court erred in finding that Mowdy did not breach the lease by allowing Morrison to occupy the home. The trial court found as follows: "The lease did not expressly nor impliedly prohibit a spouse from co-habiting with Defendant, nor can the law disallow marriage. . . . Therefore, Defendant did not breach the lease when she married Claude Morrison, and they lived together as husband and wife in their home."

Before analyzing the conclusion that the addition of an occupant did not breach the lease, we must review the court's determination that the lease is unambiguous because that decision controls the standard and scope of review for interpreting the contract. *See SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (meaning of unambiguous contract is question of law); *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 529 (Tex. 1987) (meaning of ambiguous contract is question for the fact-finder). Whether a contract is ambiguous is a question of law for the court. *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). A contract is ambiguous when its meaning is uncertain and doubtful or is susceptible to more than one reasonable interpretation. *Id.* Ambiguity does not exist merely because the parties forcefully assert diametrically opposed interpretations. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996). Nor is silence in the contract about an issue necessarily ambiguous. *See Hewlett-Packard Co. v. Benchmark Elecs., Inc.*, 142 S.W.3d 554, 561 (Tex. App.—Houston

4

[14th Dist.] 2004, pet. denied). Silence may create a latent ambiguity, the determination of which is an issue for the trier of fact. *Id*. at 562.

We give the language in a contract its plain, grammatical meaning unless doing so would clearly defeat the parties' intentions. *Tana Oil & Gas Corp. v. Cernosek*, 188 S.W.3d 354, 359 (Tex. App.—Austin 2006, pet. denied). When a written contract is worded so that it can be given a certain or definite meaning or interpretation, it is unambiguous and the court construes it as a matter of law. *See American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003). If we are unable to harmonize the provisions and give effect to all clauses and the contract is susceptible to more than one reasonable interpretation, we will find the contract is ambiguous. *Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex. App.—Dallas 2004, pet. denied) (citing *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)). When a contract is silent, the question is not one of interpreting the language but rather one of determining its effect. *Hewlett-Packard*, 142 S.W.3d at 561.

We agree with the trial court that the lease in question is unambiguous regarding the identity of the tenant, the occupants permitted, and the use of the premises. The terms plainly state that the "Tenant" is Jodie Mowdy, the occupants of the premises under the lease will be "none" other than the tenant, and the only permitted use of the premises is as a "private residence." These terms are not ambiguous and are susceptible to definite interpretation as a matter of law. Under the unambiguous terms of this lease, one occupant of the premises is allowed and that occupant is Jodie Mowdy.

5

Mowdy argues that "the lease does not expressly nor impliedly prohibit a spouse from cohabiting with Appellee, nor can the law disallow marriage." Mowdy also adds that "there is no pertinent Texas case law that would underscore the notion that a tenant breaches a lease upon marrying and then permitting the spouse to cohabit with the tenant on the leased premises." While the lease does not speak in terms of a potential future spouse, it prohibits any occupant other than Mowdy regardless of who the other occupant might be. There is no "spouse exception" to the provision relating to the number of permissible occupants. Nor was the lease amended by the parties to allow an additional occupant when Mowdy married.

A landlord is within his or her rights to choose to lease residential property for use by only one occupant, and a lessee is certainly allowed to accept such an arrangement. However, a lessee may not then unilaterally alter such a lease agreement to bring in an additional occupant regardless of whether that additional occupant is a parent, a sibling, a friend, a roommate, a sublessor, or a new spouse. By prohibiting more than one occupant, the lease did not "disallow marriage." Mowdy was free to marry just as she was free to decide that she would rather live with someone rather than alone. She was not, however, free to increase the number of occupants under her lease with Kaspar-Wells absent an agreed amendment to the lease or other agreement with Kaspar-Wells. By occupying the premises with another person, who happened to be her husband, Mowdy breached the unambiguous terms of the lease. The trial court's finding to the contrary is error as a matter of law.

We next consider whether the trial court erred by failing to find that Mowdy operated a business from the house, thereby breaching the lease term permitting use of the premises only as

6

a private residence. Kaspar-Wells asserts that the use of the house's address as the "business address" on the June 21, 2004 assumed name certificate—by itself—conclusively proves, as a matter of law, that the house was being used impermissibly as a business site. We disagree.

Despite the fact that the leased address is on the June 21, 2004 assumed name certificate, other evidence supports the trial court's finding that the leased property was not used to operate a business. A new assumed name certificate filed September 24, 2004, changed the listed address for Bio Remediation from that of the leased premises to a post office box in Austin. Morrison testified that he conducts the business entirely over the telephone and through mail. He takes orders for certain industrial products from a few long-term clients and fills those orders through suppliers in other cities, who send the products directly to his clients. He said that no Bio Remediation clients, products, or anything else have come to the house. Mowdy testified that they never posted a business sign in front of their house, never hosted clients, and never took business calls on the residential telephone. Morrison's business card and the company's letterhead list the Austin post office box, not the leased premises, as the address for Bio Remediation Services. Apart from the leased address being listed as the company's home address on the assumed name certificate for three months, no other evidence suggests that the residence was used for any purpose other than as a private residence. On the contrary, the evidence supports the trial court's finding that "[t]here is nothing in or around the Morrison home that would manifest a business being conducted within." We affirm the trial court's findings that the leased premises were not used for the purpose of operating a business and that Mowdy did not breach the lease term restricting her use of the property as a private residence.

Both the lease and the record are insufficient for this Court to determine what remedy, if any, was agreed upon, contemplated, or should be applied upon a breach of the occupancy provision. While the lease has a "termination date"—when Mowdy "moves out or vacates residence or does not pay property taxes or maintain insurance"—the lease is silent regarding the remedy or consequences for breach of any of its provisions.[4] Since the trial court did not find a breach of the lease, the court did not consider or rule on whether such breach is material or what remedy, if any, is available to Kaspar-Wells for a breach by Mowdy of the occupancy provision in the context of a claim for declaratory relief.[5] The trial court also did not consider whether an award of attorneys' fees under the declaratory judgments act would be appropriate. Consequently, a remand of this matter is appropriate.

---

[4] Courts cannot make contracts for the parties, *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998), but courts can supply omitted terms necessary to effectuate the purposes of the contract in circumstances where, for a variety of reasons, the parties failed to make express provision about an event that did occur. *Lake LBJ Mun. Util. Dist. v. Coulson*, 692 S.W.2d 897, 906 (Tex. App.—Austin 1984), *rev'd on other grounds*, 734 S.W.2d 649 (Tex. 1987). A court can only do so when it is "necessary to effectuate the intention of the parties as disclosed by the contract as a whole," if such an implication "rest[s] entirely on the presumed intention of the parties as gathered from the terms actually expressed" within the four corners of the contract. *Danciger Oil & Ref. Co. v. Powell*, 154 S.W.2d 632, 635 (Tex. 1941). Courts may only imply a term into a contract where "it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it, and therefore omitted to do so" or in situations where "it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole. . . . " *Id*.

[5] We note that Kaspar-Wells's pleadings seek a declaration that Mowdy is in breach of the lease and that the breach is material. The pleadings also request that "in the event that the Court renders a declaration that there is a material breach of the Lease Contract by the Defendant, the Plaintiff requests that the Court compel the Defendant to vacate the premises and not interfere with the Plaintiff's sole use and possession of the property." Whether such relief is available or appropriate in the context of a claim for declaratory judgment we leave to the consideration of the trial court on remand.

8

We affirm the trial court's finding that Mowdy did not operate a business at the leased premises and, therefore, did not breach the lease's residential use provision. We reverse the trial court's finding that Mowdy did not breach the lease's occupancy provision and render a declaration that Mowdy breached the lease's prohibition against occupancy by anyone other than Mowdy. We remand this cause for further proceedings consistent with this opinion.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in Part, Reversed and Rendered in Part, Reversed and Remanded in Part

Filed: March 16, 2007