C. Bert DICKENS, et al., Appellants,

v.

Charles O. HARVEY, Appellee.

No. 10–93–095–CV.

Court of Appeals of Texas,
Waco.

Jan. 19, 1994.

Vaughan E. Waters, Davis & Davis, Bryan, for appellants.

Bryan F. Russ, Jr., Palmos, Russ, McCullough & Russ, Hearne, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

THOMAS, Chief Justice.

In 1982 C.J. Rutten conveyed fifty acres of a 1162–acre tract to Charles Harvey, reserving from the conveyance "all mineral reservations, royalty reservations and/or mineral leases" in Rutten's chain of title. The deed also provided that "No Minerals are transferred by this Deed." Rutten had previously executed a coal and lignite lease on the property in 1977. Rutten later divided the ownership of the minerals under the property among Bert Dickens and several other parties. (For convenience sake, "Dickens" will refer to Rutten's successors in interest). Harvey sued Dickens in 1992, seeking a declaratory judgment that the 1982 deed conveyed the coal and lignite to Harvey as a matter of law because these substances were not expressly excepted from the conveyance and were therefore part of the surface estate. Dickens counter-claimed for reformation of the deed to reflect an express reservation by Rutten of the coal and lignite based on a mutual mistake.

Both sides moved for a summary judgment. The court granted Harvey a summary judgment, declaring that: (1) the deed conveyed the coal and lignite to Harvey; (2) the reservation clause did not reserve any right, title or interest in the coal and lignite; and (3) Dickens take nothing on the claim for reformation of the deed. Also, the court denied Dickens' motion for a summary judgment which asserted that, regardless of who owned the lignite and coal, the deed reserved the royalty under the 1977 lease as a matter of law.

We will reverse the summary judgment in favor of Harvey to the extent it decrees that the deed conveyed the coal and lignite as part of the surface estate and that the reservation clause did not reserve in Rutten any right, title or interest in the coal and lignite. However, we will affirm Harvey's summary judgment to the extent it grants him a take-nothing judgment on Dickens' claim for reformation. Finally, we will reverse the denial of Dickens' motion for summary judgment and render a declaratory judgment in favor of Dickens that, regardless of the ownership of the coal and lignite, the deed reserved in Rutten the royalty under the 1977 lease. The portion of the cause relating to ownership of the coal and lignite will be remanded for further proceedings.

## HARVEY'S SUMMARY JUDGMENT

### I.

The court granted Harvey a summary judgment that the deed conveyed the coal and lignite to him as a matter of law. Dickens contends Harvey failed to conclusively establish that the coal and lignite were "near surface" and, thus, a genuine fact issue exists whether these substances passed with the surface estate. We review the summary judgments under the rules in *Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985).

The Texas Supreme Court in *Acker v. Guinn*, 464 S.W.2d 348, 349 (Tex.1971), interpreted a deed to determine whether iron ore was included in the term "other minerals." Emphasizing that the general intent of the

parties controls, rather than their specific intent to include or exclude a specific substance from the conveyance, the Court noted that parties ordinarily do not contemplate that the surface estate will be destroyed or substantially impaired by production of the minerals, and held:

Unless the contrary intention is affirmatively and fairly expressed, therefore, a grant or reservation of "minerals" or "mineral rights" should not be construed to include a substance that must be removed by methods that will, in effect, consume or deplete the surface estate.... That is the rule to be applied in determining whether an interest in the iron ore was conveyed by the deed in this case.

*Id.* at 352.

■ In *Reed v. Wylie,* 554 S.W.2d 169, 170–71 (Tex.1977), usually referred to as "*Reed I,*" the Court interpreted a deed to determine whether coal and lignite were reserved to the grantor under the term "other minerals." It reiterated its holding in *Acker* and applied the *Acker* rule to determine the parties' intent, ultimately holding:

Because it is not expected that the parties to the instrument would have intended the destruction of the surface by the mineral owner in the absence of an expression of that intention, their use of "mineral" in the instrument is not construed to include the near surface substances.

*Id.* at 172. Following a retrial, the Court held in *Reed II* that coal and lignite deposits within 200 feet of the surface are "near surface" as a matter of law. *Reed v. Wylie,* 597 S.W.2d 743, 748 (Tex.1980) ("*Reed II*"). Thus, a person claiming ownership of coal and lignite as part of the surface estate must prove either (1) that the substances lie within 200 feet of the surface or (2) that their mining may substantially impair or destroy the surface. *Id.* at 747–48. Of course, the proof must be conclusive in the context of a summary-judgment proceeding.

■ The deed to Harvey did not mention coal and lignite. Thus, to prevail on his summary judgment, Harvey had to conclusively establish at least one prong of the *Reed II* test. There is, however, no summary-judgment evidence of the location of the coal and lignite in relation to the surface or that its removal may destroy the surface. Because a fact issue exists on these questions, the court erred when it granted Harvey a summary judgment that the deed conveyed the coal and lignite to him as a matter of law. *See* Tex.R.Civ.P. 166a(c).

## II.

Harvey also sought a summary judgment construing the reservation clause as not reserving in Rutten any interest in the coal and lignite. He based the motion on two grounds, both of which assume that the deed conveyed the coal and lignite as part of the surface estate. Harvey conceded in his motion that the deed reserved "minerals" but argued that, under the rule in *Reed II,* the coal and lignite are not part of the mineral estate but part of the surface. Thus, according to Harvey's first ground, the reservation language was legally ineffective to reserve any interest in those substances as *minerals.*

His second ground is likewise based on the premise that the deed reserved only minerals and that the coal and lignite are surface and not part of the mineral estate. Harvey contended in his motion that, as a matter of law, the 1972 contract of sale underlying the 1982 deed obligated Rutten to convey the coal and lignite as part of the surface estate and, having agreed to do so, he could not later reserve any interest in those substances as *minerals.*

■ The court concluded in the summary judgment for Harvey that the deed did not reserve "any right, title [or] interest" in the coal and lignite. As already noted, Harvey did not conclusively establish that the coal and lignite are near-surface or that their mining may destroy the surface and, thus, fact issues exist on these questions. Furthermore, assuming that Rutten agreed to convey the coal and lignite as surface, he was not prevented as a matter of law from reserving an interest in those substances in the deed. Although he might be subject to a suit for specific performance or reformation, the law did not preclude a variance between the contract of sale and the deed. For these reasons the court erred when it concluded as

a matter of law that the coal and lignite passed to Harvey with the surface and, for that reason, the deed did not reserve any interest in those substances as minerals.

We discuss the application of *Reed II* to the interpretation of the reservation language in the clause in the section of the opinion dealing with Dickens' motion for a summary judgment.

## III.

In his counter-claim Dickens sought to reform the deed to expressly reserve the coal and lignite from the conveyance to Harvey. The alleged basis for reformation was that the parties to the instrument were mutually mistaken as to the legal effect of the language in the reservation clause. Harvey moved for a summary judgment on the ground that Dickens' claim for reformation was conclusively barred by the four-year statute of limitations. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.051 (Vernon 1986); *Miles v. Martin,* 159 Tex. 336, 321 S.W.2d 62, 69 (1959). As already noted, the court granted Harvey a take-nothing summary judgment on the claim for reformation.

■ Generally, the grantor is charged with knowledge of all defects in a deed. *See Sullivan v. Barnett,* 471 S.W.2d 39, 45 (Tex. 1971). This presumption of immediate knowledge, however, is rebuttable under certain circumstances. *Id.* Absent evidence which demonstrates that the claim fits within an exception to the presumption, the statute of limitations begins to run on the date of the deed's execution, and a claim for reformation is barred four years thereafter. *See Lathem v. Richey,* 772 S.W.2d 249, 253 (Tex.App.— Dallas 1989, writ denied).

■ A mutual mistake over the legal effect of words used in a deed is a well-recognized exception to the presumption of immediate knowledge. *See Brown v. Havard,* 593 S.W.2d 939, 944 (Tex.1980). When a cause of action for reformation is based on a mutual mistake of the legal effect of the language in a deed, the "discovery rule" operates to toll the statute of limitations. *Id.* Under this doctrine, the statute of limitations begins to run when the party seeking refor-

mation knew, or in the exercise of reasonable diligence should have known, of the mistake in the deed. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988).

■ In a summary-judgment context the burden of disproving the discovery rule is on the defendant who seeks a summary judgment based on limitations. *Id.* at 518 n. 2. Thus, "a defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the nature of the injury." *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

■ Harvey sought to negate the discovery rule by presenting evidence that Rutten, the grantor, was placed on notice of the potential mistake in the 1982 deed by Rutten's involvement in two similar lawsuits, one in 1985 and one in 1986. The first suit, styled *Thompson v. Rutten,* was filed in the summer of 1985. Thompson sued Rutten for a declaratory judgment interpreting a mineral reservation in a deed conveying a portion of the 1162–acre tract. Rutten executed the deed in 1984 under a contract for the sale of land entered into with Thompson in June 1972, the same month as the contract underlying the Harvey deed. The Thompson deed reserved "all of the minerals under and that may be produced from under the premises hereby conveyed" and stated that "the term 'minerals' as used herein shall be legally construed according to the law applicable to this term and to such Contracts of Sale as of June 1, 1972." Rutten counter-claimed for reformation of the deed in June 1985, alleging a mutual mistake over the legal meaning of the language in the deed—the same theory relied on by Dickens.

The second suit, *Head v. Rutten,* was filed in the summer of 1986. Head brought the suit for a declaratory judgment directly on the contract for the sale of land executed in June 1972 by Head and Rutten. The contract provided that "no mineral shall be conveyed." Head sought to have the court declare that Rutten was compelled to convey to

him the coal and lignite under the land upon payment of the balance of the contract sales price. Rutten's original answer was filed in July 1986.

Dickens attempted to raise a fact issue on the discovery rule by asserting that there is no evidence Rutten was ever personally informed of the legal issues involved in the prior suits. One can reasonably presume, however, that an individual, who is sued twice in less than a year in virtually identical lawsuits, is personally acquainted with the legal theories and issues involved. Once equipped with this knowledge, Rutten, in the exercise of reasonable diligence, should have known as a matter of law, no later than 1986, of the potential problem with the legal effect of the language in the Harvey deed.

Dickens also claims that the Thompson and Head pleadings fail to show that Rutten "retained . . . any interest whatsoever in the 50-acre tract at issue herein" and that Rutten's knowledge could not serve to trigger the statute of limitations because he had already conveyed the property to Harvey in 1982. There is authority which states that the right to seek reformation of a deed is personal to the grantor or grantee and does not pass in a later conveyance, absent a specific reference to that effect. *See Halbert v. Green*, 156 Tex. 223, 293 S.W.2d 848, 851 (1956); *Barker v. Levy*, 507 S.W.2d 613, 620 (Tex.Civ.App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). None of the cases cited above are inconsistent with this rule, as each involved either the original grantor or original grantee. Thus, Rutten's discovery of the potential mistake governs the triggering of the statute of limitations.

The contracts in the Thompson and Head cases and the contract underlying the Harvey deed were executed during the same month in 1972 and are virtually identical in their terms, except for the parties and the land involved. A question of the legal effect of the exception of "minerals" was raised in both of the prior suits. Rutten answered in each suit and even counterclaimed for reformation of the Thompson deed based on the same legal theory as here. This evidence conclusively established that no genuine fact issue exists of when Rutten knew, or by the exercise of reasonable diligence should have known, that there was a problem with the legal effect of the language in the Harvey deed. Thus, Harvey established as a matter of law that the statute of limitations for reformation of the Harvey deed began to run, at the latest, in 1986. Consequently, any claim for reformation by Rutten or his successors in interest must have been filed by 1990. *See* Tex.Civ.Prac. & Rem.Code Ann. § 16.051; *Miles*, 321 S.W.2d at 69.

Dickens did not file his counterclaim for reformation until November 1992, more than two years too late. Thus, the court correctly granted a summary judgment that Dickens take nothing on the claim for reformation.

### DICKENS' SUMMARY JUDGMENT MOTION

The deed contained this clause:

SAVE AND EXCEPT, there is reserved and excepted from the property hereby conveyed all mineral reservations, royalty reservations and/or mineral leases, if any, in Grantor's chain of title to the extent and only to the extent that the same may be in force and effect, and shown of record in the office of the County Clerk of Robertson County, Texas. No Minerals are transferred by this Deed.

Dickens moved for a summary judgment based upon the language reserving "all mineral reservations, *royalty reservations* and/or *mineral leases*" in Rutten's chain of title from the conveyance to Harvey. (Emphasis added). He argued that, regardless of the ownership of the coal and lignite, the deed reserved the royalty under the 1977 lease as a "royalty reservation" or a "mineral lease" as a matter of law. Thus, according to Dickens, even if Harvey acquired title to the coal and lignite, his title would be subject to the outstanding royalty interest. The court denied the motion.

The clause in question presents two separate and distinct issues relating to intent. First, because minerals are expressly excepted from the conveyance—"No Minerals are transferred by this Deed"—did the parties intend to except the coal and lignite from the conveyance as "minerals?" This question

will be answered on remand by using the rule of interpretation in *Reed II* to determine the general intent of the parties, and we express no opinion in that regard.

■ The second question is whether the parties intended the terms "royalty reservations" or "mineral leases" to include the royalty under the 1977 lease? The answer to this question does not depend upon ownership of the coal and lignite, and the rule in *Reed* II, which will be used to determine ownership of the coal and lignite, is inapplicable. *See Martin v. Schneider,* 622 S.W.2d 620, 621 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Therefore, the intent of the parties is to be determined by the usual rules for interpreting deeds.

■ We will first consider the terms "royalty" and "royalty reservations." A royalty interest, which is a part of the total mineral estate, can be separately alienated from the remaining incidents of mineral ownership. *Luckel v. White,* 819 S.W.2d 459, 463 (Tex.1991). Often, it is severed from the mineral estate by a specific grant of that interest in a "royalty deed." *See id.* at 463–64. The term "royalty reservation," however, refers to those royalty interests that are severed from the total mineral estate in the course of a conveyance of the remainder of the mineral estate. *See Schlittler v. Smith,* 128 Tex. 628, 101 S.W.2d 543, 544 (1937). Because a mineral "lease" conveys ownership of the minerals, a royalty can be reserved in a lease. *See Moser v. U.S. Steel Corp.,* 676 S.W.2d 99, 101 (Tex.1984); *Cherokee Water Co. v. Forderhause,* 641 S.W.2d 522, 525 (Tex.1982).

■ Both terms, "royalty" and "royalty reservations," have well-defined meanings, and they must therefore be ascribed their usual meaning, unless a different meaning is indicated by the context of their use. *Texas Co. v. Meador,* 250 S.W. 148, 150 (Tex. Comm'n App.1923, judgm't adopted). Here, the context in which they are used—*i.e.,* the grantor hereby reserves from the conveyance all royalty reservations in his chain of title—does not indicate that a different meaning is intended.

The clause in question is unambiguous, and the intent of the parties with respect to the reservation of all royalty reservations in Rutten's chain of title is clearly stated in its language. No material fact questions exist in that regard, and Dickens is entitled to a judgment as a matter of law that the deed reserved the royalty under the 1977 lease in Rutten and his successors in interest. *See* TEX.R.CIV.P. 166a(c). Thus, the court erred when it denied Dickens' motion for a summary judgment based on that interpretation of the deed.

Because the royalty under the prior lease is reserved in Rutten by the term "royalty reservations," we need not decide whether it is also reserved from the conveyance under the term "mineral leases."

## DISPOSITION

Points one and two are sustained. We reverse the summary judgment in favor of Harvey to the extent it decrees that (1) the deed conveyed to him the coal and lignite as a matter of law and that (2) the deed did not reserve unto Rutten "any right, title [or] interest" in the coal and lignite. However, we affirm the summary judgment in favor of Harvey to the extent it decrees that Dickens take nothing on the claim for reformation. Moreover, we reverse the summary judgment denying Dickens' motion for a summary judgment and render a declaratory judgment for Dickens that the reservation clause of the deed—specifically, the "royalty reservations" language in the clause—reserved in Rutten and his successors in interest the royalty in the 1977 coal and lignite lease. Finally, we remand the portion of the cause involving the ownership of the coal and lignite for further proceedings.

VANCE, J., not participating.