Howard BURDETTE, Herman Burdette, Jr., Gerald Burdette, Virginia Burdette Johnson, Brenda Bradley, La Toshia Burdette, and La Kehia Burdette, Appellants,

v.

ESTATE of Wright Patrick BURNS, and Marjorie Burns, Appellees.

No. 05-05-01620-CV.

Court of Appeals of Texas, Dallas.

Aug. 31, 2006.

James E. Polk, Dallas, for Appellant.

Robert M. Jones, Dallas, for Appellee.

Before Justices FITZGERALD, FRANCIS, and LANG–MIERS.

## OPINION

Opinion by Justice LANG–MIERS.

Appellants Howard Burdette, Herman Burdette, Jr., Gerald Burdette, Virginia Burdette Johnson, Brenda Bradley, La Toshia Burdette, and La Kehia Burdette filed suit against the Estate of Wright Patrick Burns and Marjorie Burns to partition real property located in Dallas County, Texas. When the case was called to trial, the parties announced to the trial judge they had reached a settlement, and dictated the agreement into the record. The trial judge entered a final judgment based upon the agreement. Appellants then sought to set aside the judgment, asserting the judgment was not consistent with the parties' agreement. The motion was denied, and appellants filed this appeal. In their first issue, appellants complain the trial judge abused his discretion in entering a judgment reflecting that liens created by appellee would attach to the entire proceeds of the partition sale. In their second issue, appellants complain the agreement announced in open court created an ambiguity as to whether the liens created by appellee would be paid from her portion of the sales proceeds from the partition sale. We affirm the trial court's judgment.

## BACKGROUND

In their original petition, appellants alleged the real property at issue was purchased in 1982 by Earlie Burdette. In 1987, Earlie married Wright Patrick Burns, and they lived on the property together. Earlie died intestate on March 19, 1996. She had no children, but was survived by her husband. She was also survived by appellants, who are four of her siblings and the children of two other deceased siblings. Wright Patrick Burns later married appellee Marjorie Burns. The petition alleged Wright fraudulently transferred title to the property to himself by quitclaim deed, and then transferred the property by warranty deed to Marjorie Burns. The petition alleged Wright died on March 6, 2003, and appellants became entitled to possession and a partition of the land upon his death. Appellants requested the property be sold and the proceeds partitioned pursuant to the parties' respective shares in the property.

Before trial, the parties announced in open court they had reached a settlement.

They stipulated that appellants owned half of the property and appellee owned the other half. However, after judgment was entered on the agreement, appellants filed a motion to set aside the judgment. Appellants alleged the judgment incorrectly required payment of indebtedness on the property out of the proceeds of the sale, instead of requiring payment of indebtedness out of only appellee's share of the proceeds.

## STANDARD OF REVIEW

▆ Appellants complain the trial court erred in entering the judgment and in denying their motion to set aside the judgment. We review these complaints to determine if the trial judge abused his discretion, guided by the principle that a trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles. *See Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex.2003); *see also Champion Int'l Corp. v. Twelfth Court of Appeals,* 762 S.W.2d 898, 899 (Tex.1988) (trial court has wide discretion in denying motion for new trial; its action will not be disturbed on appeal absent showing of abuse of discretion). In their second issue, appellants complain the settlement agreement was ambiguous. The interpretation of a written contract is a question of law which we review de novo. *See MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.,* 995 S.W.2d 647, 650–51 (Tex.1999).

## DISCUSSION

▆ In their first issue, appellants argue they never agreed to pay any liens on the property from the proceeds of the partition sale, and appellee waived any claim to have liens she incurred on the property paid from appellants' share of the proceeds from the sale. Appellants argue that because the settlement agreement does not include an agreement to pay any liens, and does include a waiver, the trial judge should have entered judgment ordering that all liens on the property that secured debts incurred by appellee should be paid from appellee's share of the proceeds of the partition sale. In their second issue, appellants claim the agreement is ambiguous regarding payment of liens and should be construed against appellee because her counsel made the statement on the record regarding waiver. Appellee contends appellants failed to preserve any issue for appeal. However, appellants did complain of the trial judge's alleged error in their motion to set aside the judgment; therefore we address appellants' issues on appeal.

▆ In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.* If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Id.*

The statement of the parties' agreement on the record is as follows: .

So that the Court, we stipulate, should enter a judgment that the ownership of this property is 50 percent in Marjorie Burns and 50 percent in the plaintiffs. The parties agree to partition—well, to sell the real estate and partition the proceeds from the sale pursuant to the

ownership interest. We agree to the appointment of a receiver for the purposes of effecting the sale. Mr. Polk and I will agree on the name of that receiver. We haven't reached that, but we will shortly and we'll put it in the judgment we submit to the Court. And Mrs. Burns shall continue living at the property and continue paying on the mortgage until the property is sold.

Appellee had also made a claim for $14,000 she had paid for improvements on the property. When the parties announced their settlement, the question arose whether this claim remained to be tried. Appellee's counsel stated, "If the Court please, we're going to waive the issue—or the question about the improvements. We think the matters [sic] adequately covered entirely by the stipulation before the Court." The trial judge commented, "Because the improvements should come out in the sale of the house. That should enhance the value of the sale of the house. You should be getting your money back, at least part of it from that." Appellee's counsel replied, "Yes, sir. Yes, sir. She's [appellee] paid the mortgage. She's done a number of things. But she's not asking anything for that at this stage." Appellants' counsel then waived a claim for attorneys' fees and agreed to draft the judgment.

The September 2, 2005 judgment entered by the trial court recited that the property would be sold and the proceeds "paid and divided as follows: First, the indebtedness on the property shall be paid...." Appellants argue this is inconsistent with the settlement agreement, because appellants did not agree to pay any debt created by appellee on the property. In their motion to set aside the judgment, appellants claimed appellee took out a loan in the amount of $51,522.27 on the property after appellants filed this lawsuit, but before settlement. The only evidence of this loan was a closing statement attached to the affidavit of appellants' attorney James E. Polk that was submitted with the motion to set aside the judgment. The record does not reflect the closing statement was admitted into evidence at any time. Appellants state in their brief "[t]he amount of equity removed from the Dallas Property as a result of Marjorie Burns' lien on the Dallas Property after the suit was filed is in the amount of $19,188.16." There is no citation to the record for this contention, and no evidence in the record reflecting this amount or revealing how it was calculated.

■ Nevertheless, the essence of appellants' claim on appeal is the trial judge made an error of law in entering judgment without providing that any lien incurred by appellee on the property should be paid from appellee's portion of the proceeds of the partition sale. Appellants cite to *Thomas v. McNair*, 882 S.W.2d 870 (Tex. App.-Corpus Christi 1994, no writ), and *Hoover v. Materi*, 515 S.W.2d 406 (Tex. Civ.App.-El Paso 1974, writ ref'd n.r.e.), for the "generally recognized rule" that "mortgages or other liens on the undivided interest of a cotenant will, in the case of a partition sale, attach to the cotenant's share of the proceeds of such sale, and the purchaser at the partition sale takes the property discharged of the lien." *Hoover*, 515 S.W.2d at 408.

Both *Hoover* and *Thomas* note a trial court may determine the amount due on a valid lien on property to be sold at a partition sale and order the amount due to be paid "out of the distributive share of the encumbrancing tenant." *Hoover*, 515 S.W.2d at 408; *Thomas*, 882 S.W.2d at 877. In *Hoover*, however, the issue was not raised until after the partition sale had taken place. *See Hoover*, 515 S.W.2d at 408. Because Hoover's request was un-

timely, the trial court's judgment that the proceeds of the partition sale be divided equally was affirmed even though one of the parties had incurred a $10,000 lien on the property. *See Hoover*, 515 S.W.2d at 407–08.

In *Thomas,* the court held "a trial court, which determines by preliminary judgment the necessity of sale and respective interests of each party in a partition suit, does not have to ascertain the amount that is owed on a lien and does not have to order that the lien be paid out of the distributive share of the encumbrancing co-tenant." *Thomas,* 882 S.W.2d at 878. It remains within the discretion of the trial judge whether to address these issues prior to the sale. *Id.* at 878. The *Thomas* court concluded, "[t]he trial court, however, must determine in its final order of disbursement all interests relating to the property in question and address all issues, including encumbrances on the property, which were raised at trial prior to the judgment." *Id.*

Consequently, neither *Thomas* nor *Hoover* hold it is an error of law for the trial judge to enter judgment that did not require liens to be paid out of appellee's share of the proceeds. In fact, it is difficult to determine how the trial judge here could have entered such a judgment, as at no point did appellee offer any evidence regarding the amount due on the lien or the equities surrounding it. We hold the trial judge did not commit an error of law by not including in the judgment a provision regarding the payment of liens out of appellee's share of the proceeds of the partition sale.

█ We further hold the trial judge did not abuse his discretion in entering judgment or in denying appellants' motion to set aside the judgment. First, the record does not reflect that any issue was brought to the trial judge's attention before entry of judgment. Although appellants allege the September 2, 2005, judgment was entered "over plaintiffs' objection," the record does not reflect what objection was made or how the trial judge ruled on it prior to entering the judgment. A form of judgment, prepared by appellants marked as Exhibit 5 to the affidavit of appellants' attorney James E. Polk, was submitted with the motion to set aside the judgment filed in October. The affidavit states, "Attached hereto as Exhibit "5", is a true and correct copy of the proposed order presented by the Plaintiffs for the Court's signature the [sic] May 25, 2005 hearing to enter judgment." But Exhibit 5 is not dated except to reflect the hearing took place on May 25. And the transcript of the May 25 hearing concluded with Mr. Polk agreeing to draft the judgment, so Exhibit 5 was not submitted to the court at that hearing. In fact, it is not apparent in the record when Exhibit 5 was submitted to the court, how or why the trial judge chose the form of judgment entered on September 2 instead of Exhibit 5, and whether he heard any evidence or argument regarding the terms of the settlement agreement or the form of judgment before September 2. As a result, appellants have not established the trial judge abused his discretion in entering the September 2 judgment.

█ Second, appellants do not establish or explain how the trial judge acted without reference to guiding rules and principles in denying the motion to set aside the judgment. There is no record of any hearing on the motion to set aside the judgment; the order denying the motion recites only that the motion "came on to be heard" on October 14, 2005, and that it was denied. There is no record of the admission of any exhibits into evidence. And the trial judge had the discretion to modify the judgment to reflect the lien should be

repaid from appellee's portion of the proceeds from partition. *See Thomas*, 882 S.W.2d at 877–78. However, without any record, we cannot say the trial judge abused his discretion by deciding not to do so.

■■■ In their second issue, appellants claim the agreement was ambiguous. Although appellee argues appellants did not raise the issue of any ambiguity with the trial court, "[a] court may conclude that a contract is ambiguous even in the absence of such a pleading by either party." *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex. 1993); *see also Royal Maccabees Life Ins. Co. v. James*, 146 S.W.3d 340, 347 (Tex. App.-Dallas 2004, pet. denied) (this court may determine ambiguity as a matter of law for the first time on appeal). However, lack of clarity does not create an ambiguity, and not every difference in the interpretation of a contract amounts to an ambiguity. *Universal Health Svcs., Inc. v. Renaissance Women's Group, P.A.*, 121 S.W.3d 742, 746 (Tex.2003) (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex.1994)). If a contract can be given a certain or definite legal meaning, then it is not ambiguous. *Coker*, 650 S.W.2d at 393.

■■ We decline to hold the settlement agreement was ambiguous. While appellee's counsel clearly waived appellee's claim for the $14,000 in improvements, and arguably waived any claim to mortgage payments already made ("She's [appellee] paid the mortgage. She's done a number of things. But she's not asking anything for that at this stage."), there is no statement at all regarding any other liens, or any intentional relinquishment of a known right regarding other liens. *See Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987) (waiver is intentional relinquishment of known right).

Appellants cannot create an ambiguity by relying on extrinsic evidence of other liens. *See DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 857–58 (Tex.App.-Houston [14th Dist.] 2003, pet. denied) (parol evidence of circumstances surrounding formation of contract not admissible to create ambiguity). The agreement can be given a definite legal meaning: the parties intended to sell the property and split the proceeds according to their agreed percentages of interest. *See Coker*, 650 S.W.2d at 393 (agreement not ambiguous if it can be given definite legal meaning). We overrule appellants' second issue. We affirm the judgment of the trial court.