SIMBA VENTURES SHREVEPORT, L.L.C., Appellant,

v.

RAINIER CAPITAL ACQUISITIONS, L.P. and Chicago Title Insurance Company, Appellees.

No. 05–07–01525–CV.

Court of Appeals of Texas, Dallas.

May 8, 2009.

Rehearing Overruled Sept. 29, 2009.

Christopher D. Kratovil, Kirkpatrick & Lockhart Preston Gates Ellis LLP, Jennifer Bellow, Hughes & Luce, L.L.P., Casey P. Kaplan, Dallas, Jeffrey C. King, Hughes & Luce, L.L.P., Ft. Worth, for appellant.

John M. Ledyard, Irving, Kenneth B. Chaiken, Chaiken & Chaiken, P.C., Dallas, for appellees.

Before Justices BRIDGES, FITZGERALD, and LANG.

## OPINION

Opinion By Justice BRIDGES.

This case involves the interpretation of a purchase sale agreement ("PSA") between Simba Ventures Shreveport, L.L.C. and Rainier Capital Acquisitions, L.P. Simba appeals from a summary judgment in favor of Rainier and, in a single issue, argues the trial court erred by holding that the contract between the parties unambiguously gave Rainier the right to terminate the contract and receive a full refund of the earnest money. Rainier has responded to Simba's appeal and has also filed a cross-appeal, arguing the trial court erred in failing to award Rainier its attorneys' fees and costs. For the reasons set forth below, we affirm the trial court's order granting summary judgment in favor of Rainier and reverse and remand the issue of Rainier's request for attorney's fees and costs.

## Background

On October 12, 2006, Simba and Rainier entered into a PSA whereby Rainier agreed to purchase property from Simba in Louisiana. In accordance with the terms of the PSA, Rainier deposited the sum of $200,000.00 as earnest money and additional earnest money with Chicago Title Insurance Company.[1]

The parties subsequently amended the PSA twice. The second amendment to the PSA provides, in pertinent part, as follows:

1. [Rainier] shall continue to have the right to terminate the Contract on or before **December 26, 2006,** and receive a full refund of all Earnest Money (including the Additional Earnest Money) if [Rainier's] lender does not approve both the Property Condition Report and the Phase II Environmental Report so that such lender is willing to provide financing to [Rainier] for purchasing the Property without materially changing the economic terms of the transaction

---

1. Under the terms of the PSA, Rainier was required to deposit $100,000.00 as earnest money with Chicago Title. Following the expiration of the inspection period, Rainier was required to deposit an additional $100,000.00 in earnest money. It is undisputed that Rainier deposited a total of $200,000.00 as earnest money with Chicago Title in accordance with the PSA.

(e.g., requiring escrows, reserves, additional insurance policies, etc.).

(emphasis in original). Both Simba and Rainier agree on appeal that this case focuses on the right of termination set forth in the second amendment to the PSA.

Pursuant to the second amendment, on December 26, 2006, Rainier forwarded a notice of termination to Simba as follows:

Please be advised that one or more of [Rainier's] lenders have not approved the Property Condition Report and the Phase II Environmental Report so that such lenders are willing to provide financing to [Rainier] for purchasing the Property without materially changing the economic terms of the transaction.

Accordingly, pursuant to Paragraph I of the Second Amendment to Purchase and Sale Agreement dated December 15, 2006, [Rainier] elects to terminate the Contract and receive a full refund of all Earnest Money (including the Additional Earnest Money)....

In response to the termination notice, Simba objected to the refund of the earnest money to Rainier and demanded Chicago Title deliver the earnest money to it instead. Simba contends that Rainier never indicated to Simba that a lender disapproved of the reports nor did Rainier or any prospective lender request copies of the reports from Simba prior to December 26, 2006. Simba further asserts Rainier's efforts to secure financing never progressed to the point where any lender was conducting the type of due diligence contemplated by the second amendment and, therefore, the earnest money became nonrefundable and should have been paid to Simba.

As a result of the competing claims to the earnest money, Chicago Title filed an interpleader suit and deposited the funds into the registry of the trial court.[2] Simba filed a cross-claim for declaratory relief and breach of contract. Rainier filed its cross-claim against Simba for breach of contract.

Rainier and Simba then filed traditional cross-motions for summary judgment. The trial court entered summary judgment in favor of Rainier and concluded it was entitled to the earnest money but did not award Rainier its fees and costs. This appeal ensued.

**Standard of Review**

The standards for reviewing a summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See* Tex.R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Nixon,* 690 S.W.2d at 548–49. Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Id.* When both parties move for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News,* 22 S.W.3d 351, 356 (Tex.2000). We review the summary judgment evidence presented by both parties and determine all questions presented. *Id.* The reviewing court should render the judgment that the trial court should have rendered, or remand if

**2.** After permitting Chicago Title Insurance Company to interplead the funds into the registry of the court, the trial court dismissed it from the lawsuit with prejudice.

neither party has met its summary judgment burden. *Id.*

## Discussion

### *Simba's Appeal*

In its only issue on appeal, Simba asserts that the trial court erred when it held that the contract between the parties unambiguously gave Rainier the right to terminate the contract and receive a full refund of the earnest money. Simba divides its issue into four arguments: (1) Rainier never possessed a "committed lender;" (2) Rainier failed to find a willing lender; (3) Rainier's lender did not "affirmatively disapprove" of the Property Condition Report and Phase II Environmental Report; and (4) the PSA is ambiguous.

The parties agree that Louisiana law controls the PSA. Louisiana courts have held that contracts must be construed in such a way as to lead to logical conclusions and to give effect to the obvious intention of the parties. *See Lambert v. Maryland Cas. Co.*, 418 So.2d 553, 559 (La.1982); *Franks Petroleum, Inc. v. Mayo*, 438 So.2d 696, 699 (La.Ct.App. 1983); *see also Shoreline Gas, Inc. v. Grace Resources, Inc.*, 786 So.2d 137, 140 (La.Ct.App.2001) (stating the purpose of contract interpretation is to determine the common intent of the parties). Contracts must be interpreted in a common sense fashion, according to the words their common and usual significance. *Id.* When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation need be made into the parties intent. *Shoreline*, 786 So.2d at 140; LA. CIV.CODE art. 2046. Some effect is to be given to every word or clause if possible and terms that present two meanings must be taken in the sense most congruous to the matter of the contract. *Franks*, 438 So.2d at 699. To determine the meaning of words used in a

contract, a court should give them their "generally prevailing meaning." LA. CIV. CODE art. 2047. If a word is susceptible of different meanings, it "must be interpreted as having the meaning that best conforms to the object of the contract." LA. CIV. CODE art. 2048.

Simba first argues that Rainier is not entitled to a refund of the earnest money because "Rainier never possessed a committed lender." However, the plain language of the second amendment to the PSA does not require a "committed lender." Instead, the amendment states Rainier may terminate the PSA "if [Rainier's] lender does not approve both the Property Condition Report and Phase II Environmental Report so that such lender is *willing* to provide financing . . . ." (emphasis added). Christopher LeBlanc, manager of Simba, recognized this distinction in his deposition when he agreed the amendment "doesn't read so that such lender is committed to provide financing" but "just says a lender, and it talks about its willingness to fund." He further testified that "I don't see the word 'commitment' in here." The language contained in the PSA clearly requires a *willing* lender, but not a committed lender as argued by Simba. *See Lambert*, 418 So.2d at 559; *Shoreline*, 786 So.2d at 140 (contracts must be interpreted in a common sense fashion, according to the words their common and usual significance). Therefore, Simba's first argument fails.

Simba next argues in its brief that there is "overwhelming record evidence that Rainier failed to find a lender willing to finance its purchase under the PSA." We disagree. The summary judgment evidence before us demonstrates that at least one lender, SNB Bank of Dallas, was willing to provide financing to Rainier for the

transaction.[3] In correspondence to Northmarq Capital[4] dated December 13, 2006, SNB Bank of Dallas stated, "we are interested in working with you" and provided potential terms to an agreement to lend money for the transaction. In the same letter, SNB Bank of Dallas noted the need for additional documents for its due diligence review. In addition, Mr. Nichols of Rainier agreed during his deposition that Stillwater National Bank was "willing to extend sufficient funds to cover the debt side of this transaction when the purchase price was $19,275,000." Mr. Nichols, in his December 18, 2006 correspondence to Mr. LeBlanc, also stated "we believe Stillwater is ready to move forward with us." Thus, the evidence demonstrates as a matter of law that Rainier had at least one willing lender to fund the transaction pursuant to the PSA.

██ Next, Simba asserts that termination was only proper if Rainier's lender "affirmatively disapproved" of the reports. As noted above, the second amendment to the PSA permits termination of the contract if Rainier's lender *"does not approve* both the Property Condition Report and the Phase II Environmental Report so that such lender is willing to provide financing to [Rainier] for purchasing the Property without materially changing the economic terms of the transaction . . . ." (emphasis added). Mr. Nichols explained in his affidavit for Rainier:

> Because further evaluation of these issues, in the form of an independent Phase II Environmental Report and

Property Condition Report, was needed by Rainier and each of the entities who were considering loaning it money in the transaction, the PSA was twice amended to allow for the production of these documents and an evaluation thereof, to take place.

Mr. Nichols further stated in his affidavit that "Growth Fund had decided, as of December 26, 2006, that it would not extend a loan to Rainier because it had not approved the Property Condition Report and Phase II Environmental Report which are described in the First and Second Amendments to the (PSA), without materially changing the economic terms of such financing that it had otherwise contemplated and was willing to extend. . . ." Thus, the summary judgment record contains evidence Growth Fund did not approve the Property Condition Report and Phase II Environmental Report as required by the PSA.

Furthermore, the record contains evidence that Simba never sent these reports to Rainier prior to the December 26 termination of the agreement. In his affidavit on behalf of Simba, Mr. LeBlanc confirmed that "Rainier *had not received* a Phase II Environmental Report or a final Property Condition Report because it did not have a lender *committed* to providing financing." (emphasis added). Mr. Nichols of Rainier explained that "[a]s of the date the PSA was terminated on December 26, 2006, Simba never delivered [property documents related to the renovation and the

**3.** The affidavit of Timothy C. Nichols, Vice President of Rainier, states "as of the time the PSA was terminated by Rainier on December 26, 2006, Rainier was involved in ongoing discussions with a number of lenders who were willing to finance components of the subject transaction." His affidavit specifically names Growth Fund, Stillwater National Bank, Northmarq Capital, Simba, and Texas

Bank as potential lenders. Richard J. Cole, senior vice president of Rainier, also testified that as of December 22, 2006, "Rainier was negotiating, as we do on all of our transactions, with numerous lenders about financing terms."

**4.** Northmarq Capital served as Rainier's mortgage broker for this transaction.

Phase II Environmental Report]." Although we agree with Simba that the record does not reflect Rainier ever requested the reports, the contract does not require such action on the part of Rainier.[5] It is reasonable to conclude that a lender cannot approve documents it does not have. *See* LA. CIV.CODE art. 2046 (when the words of a contract lead to no absurd consequences, no further interpretation need be made into the parties intent). Therefore, Simba's third argument fails.

■■ Finally, Simba argues that if we determine the PSA did not require Rainier to possess a *committed lender* who *affirmatively disapproved* of the reports, the PSA is ambiguous. Although Simba did not raise ambiguity before the trial court,[6] this court may determine ambiguity as a matter of law for the first time on appeal. *Sage Street Assocs. v. Northdale Constr. Co.*, 863 S.W.2d 438, 445 (Tex.1993); *Burdette v. Estate of Burns*, 200 S.W.3d 358, 364 (Tex.App.-Dallas 2006, no pet.). When the words of a contract are clear and do not lead to absurd consequences, no further interpretation may be made in search of the parties' intent. LA. CIV.CODE art. 2046; *Orr Motors of La., Inc. v. Jamar*, 4 So.3d 305, 306 (La.Ct.App.2009). The determination of whether a contract is clear or ambiguous is a matter of law. *Id.* Appellate review that is not founded upon any factual findings made at the trial court level, but rather, is based upon an independent review and analysis of the contract within the four corners of the document, is simply whether the trial court was legally correct. *Claitor v. Delahoussaye*, 858 So.2d 469, 478 (La.Ct.App.2003).

As we have already noted, the PSA did not require a committed lender, but a willing lender, therefore, Simba's ambiguity argument fails on that point. Furthermore, the PSA does not mandate affirmative disapproval of the reports. Rather, proper termination is conditioned upon a lender's failure to approve of the reports. Even if we disregard Rainier's evidence that Growth Fund did not approve of the reports, it is not an absurd result to conclude that Rainier's willing lender did not approve of reports that were not provided to it by Simba *See Orr*, 4 So.3d at 307 (when the words of a contract do not lead to absurd consequences, no further interpretation is necessary).

We, therefore, overrule Simba's only issue on appeal.

### Rainier's Cross–Appeal For Fees

We next consider Rainier's cross-appeal for fees and costs. Specifically, Rainier contends that Simba, as the non-prevailing party, is required to pay Rainier's attorneys' fees and costs. The PSA provides, in pertinent part, as follows:

**10.3 Attorney's Fees.** In the event either party hereto employs an attorney in connection with claims by one party against the other arising from the operation of this Agreement, the non-substantially prevailing party shall pay the substantially prevailing party all reasonable fees and expenses, including attorneys' fees, incurred in connection with such claims.

Because we have overruled Simba's issue, Rainier remains the prevailing party and is

---

5. Although the delivery requirements are not specifically enumerated with regard to the Property Condition Report and Phase II Environmental Report, section 4.1 of the PSA required Simba to deliver the Phase I Environmental Site Assessment to Rainier "immediately upon [Simba's] receipt of the same."

6. In fact, Mr. LeBlanc, on behalf of Simba, testified, "I don't think the [second amendment] is ambiguous at all."

entitled to fees. *See* Tex. Civ. Prac. & Rem.Code Ann. § 38.001(8) (Vernon 2008) (permitting a fee award in a contract case). We, therefore, sustain Rainier's issue on cross-appeal and reverse the trial court's decision not to award fees to Rainier. We remand this cause for a determination of fees to be awarded to Rainier.

Having overruled Simba's issue on appeal and sustained Rainier's issue on cross-appeal, we affirm the trial court's order granting summary judgment in favor of Rainier and reverse and remand the issue of Rainier's request for attorneys' fees for proceedings consistent with this opinion.