**AFFIRM; Opinion Filed January 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-12-01551-CV

## TST IMPRESO, INC., Appellant
## V.
## ASIA PULP & PAPER TRADING (USA), INC. N/K/A OVERVEEN GENERAAL TRADING (USA), INC., Appellee

On Appeal from the 116th Judicial District Court
Dallas County, Texas
Trial Court Cause No. DC-11-00890

## MEMORANDUM OPINION
Before Justices Moseley, FitzGerald, and Fillmore
Opinion by Justice Moseley

TST Impreso, Inc. sued Asia Pulp & Paper Trading (USA), Inc., n/k/a Overveen Generaal Trading (USA), Inc.[1] for a declaratory judgment regarding the interpretation of a settlement agreement between the parties. Overveen counterclaimed against TST for breach of the settlement agreement and sought liquidated damages under its terms. The trial court ruled in favor of Overveen, granting its no-evidence and traditional motion for summary judgment as to TST's declaratory judgment claim and its traditional motion for summary judgment on its counterclaim. TST appeals; in three issues it argues the trial court erred in rendering judgment because the settlement agreement is ambiguous and genuine issues of material fact exist

---

[1]Asia Pulp & Paper Trading (USA), Inc. changed its name to Overveen Generaal Trading (USA), Inc. after signing the settlement agreement involved in this case. We refer to the company by its current name.

regarding TST's declaratory judgment claim and Overveen's counterclaim.

The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

## BACKGROUND

TST and Overveen were parties to a lawsuit pending in state court in Dallas county, described and defined in the settlement agreement as "The Litigation." In settlement of The Litigation, TST agreed to make a series of payments to Overveen and to the law firm of Arnold & Porter, LLP.[2] If any payments were not timely paid, the unpaid entity was required to give TST written notice of breach and TST had fifteen days after receipt of the notice to cure the breach by making the required payment in full. Under the settlement agreement, the payments were due sixty days, 120 days, and one year after the agreement's complete execution, which was accomplished on July 2, 2009.

TST did not make the first scheduled payment to Overveen (although it did make payments to Arnold & Porter). Overveen sent written notice of default to TST on January 13, 2011 and demanded TST cure the default within fifteen days. On January 27, 2011, TST responded by filing this lawsuit.

At issue is the italicized portion of the following provision in the settlement agreement:

*Except for payments not timely made under this Agreement resulting from the assertion by a party other than Arnold & Porter LLP of a security interest in the proceeds of the Litigation*, if TST does not cure the breach in payment within fifteen (15) days after receipt of written notice, TST shall be in default of this

---

[2]The settlement agreement recites that Arnold & Porter had notified TST of a lien against the proceeds Overveen received as a result of The Litigation. The settlement agreement provides for TST to make certain payments directly to Arnold & Porter and names Arnold & Porter as a party for the limited purpose of receiving those payments and for agreements and representations made by Arnold & Porter under specific paragraphs of the agreement.

Agreement ("Default"), and [Overveen] shall be entitled to liquidated damages in the amount of Five Hundred Thousand Dollars ($500,000.00).

TST contended it was served with notices of judgments obtained by third parties against Asia Pulp & Paper Co., Ltd. (APP), an entity related to but separate from Overveen, and that these judgments triggered the italicized provision quoted above. TST characterized its declaratory judgment claim as requesting a declaration "that TST's action in suspending payments based on asserted security interests (specifically money judgments against [Overveen's] affiliates and assigns, and APP/APP entities), was authorized by the Settlement Agreement, and that [Overveen] is thus precluded from recovering liquidated damages."[3]

Overveen counterclaimed for breach of the settlement agreement and asked for liquidated damages. Overveen later moved for summary judgment on its counterclaim and on TST's declaratory judgment claim. Overveen argued that TST's requested declarations were not supported by the language of the settlement agreement; the judgments TST was relying upon were against an entity other than Overveen; and the judgments were not security interests in the proceeds of The Litigation. It presented summary judgment evidence that TST did not timely

---

[3]In its live pleading, TST sought the following declarations:

(1) That the language of the Settlement Agreement itself that binds, warrants, benefits and releases APP and [Overveen] can be interpreted that any payments received by [Overveen] can be subject to the claims of a judgment creditor of APP; and, or in the alternative,

(2) That notice to TST by a third party of a security interest in payments to an [Overveen] affiliate, constitutes notice of a security interest in payments to [Overveen] and therefore invokes the exception clause in the settlement agreement; and, or in the alternative,

(3) Under the terms of the Settlement Agreement does notice to TST by a third party of a security interest in the proceeds of the litigation permit TST to withhold payments to [Overveen], even though the security interest is against a subsidiary, affiliate, predecessor, successor, parent, or assign; and, or in the alternative,

(4) That the language of the Settlement Agreement fails to define "security interest" therefore does not require TST to ascertain the validity of an assertion of a security interest prior to withholding payments to [Overveen]; and, or in the alternative,

(5) That APP is a party to the Settlement Agreement as a beneficiary and/or as a principal, due to the language of the settlement agreement and the representations and warranties of its agent, [Overveen]; and, or in the alternative,

(6) That the language of the Settlement Agreement permits TST to withhold the payments to [Overveen], therefore TST is not in default of the Settlement Agreement.

–3–

make the payments due under the settlement agreement, it sent written notice of default to TST, and TST did not cure the default within fifteen days by making the required payment in full. None of this evidence was disputed.

In response, TST asserted it was excused from making the scheduled payments to Overveen because it received notice of three different judgments rendered against APP: a New York federal court judgment in favor of Export-Import Bank of the United States;[4] a New York state court judgment in favor of U.S. Bank;[5] and an Illinois federal court judgment in favor of JP Morgan Chase Bank.[6] TST argued the settlement agreement did not define the term "security interest" and that the judgments against APP were "security interests" within the meaning of the settlement agreement. It also contended there was a fact issue about whether APP was a party to the settlement agreement, whether Overveen and APP were really the same entity, and whether the judgments against APP triggered the exception to its payment obligation under the settlement agreement. As a result, TST asserted there was at least an issue of fact as to whether its failure to make the scheduled payments to Overveen was excused.

The trial court granted Overveen's motion for summary judgment, without specifying the grounds for its ruling. The final judgment dismissed TST's declaratory judgment claim and awarded Overveen damages and liquidated damages under the terms of the settlement agreement, attorney's fees and costs.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Provident Life & Accident Ins.*

---

[4]TST was served on July 31, 2009 with a writ of garnishment issued by the New York federal court on the Export-Import Bank judgment against APP. The Export-Import Bank judgment was satisfied and the writ of garnishment dissolved sometime in December 2010.

[5]TST was served with a restraining notice from the New York state court regarding the U.S. Bank judgment against APP in December 2010.

[6]During the pendency of this suit, TST was served on May 14, 2012 with a citation for post-judgment discovery from the Illinois federal court relating to the JP Morgan Chase Bank judgment against APP.

*Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). We apply the well-established standards for reviewing summary judgments. *See* TEX. R. CIV. P. 166a(c), (i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310–11 (Tex. 2009) (no-evidence summary judgment standards of review); *Nixon v. Mr. Property Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985) (traditional summary judgment standards of review).

ANALYSIS

### A. Ambiguity

On appeal, TST argues the settlement agreement is ambiguous because it does not define the term security interest. Overveen contends TST is improperly raising ambiguity for the first time on appeal and that the settlement agreement is not ambiguous. TST says it did raise ambiguity below by arguing the settlement agreement did not define the term "security interest."

Both the supreme court and this Court have addressed ambiguity when raised for the first time on appeal in summary judgment and other types of cases.[7] We conclude we may consider TST"s ambiguity issue.

Ambiguity is a question of law for the court to determine by looking at the contract as a whole in light of the circumstances present when the contract was entered into. *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983). A contract is ambiguous when its meaning is uncertain or

---

[7]*See Progressive County Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808-09 (Tex. 2009) (per curiam) (summary judgment appeal where supreme court concluded contract was ambiguous even though neither party asserted ambiguity); *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 231 (Tex. 2003) (concluding agreement was ambiguous even though parties did not assert ambiguity in appeal from denial of motion to compel arbitration); *Sage St. Assoc. v. Northdale Constr. Co.*, 863 S.W.2d 438, 444-45 (Tex. 1993) (court may conclude that a contract is ambiguous even in the absence of a pleading by either party); *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) (concluding agreement was ambiguous even though both parties asserted property settlement agreement was unambiguous and moved for summary judgment); *Simba Ventures Shreveport, L.L.C. v. Rainier Capital Acquisitions, L.P.*, 292 S.W.3d 173, 178 (Tex. App.—Dallas 2009, no pet.) ("Although Simba did not raise ambiguity before the trial court, this court may determine ambiguity as a matter of law for the first time on appeal."); *Arredondo v. City of Dallas*, 79 S.W.3d 657, 666–67 (Tex. App.—Dallas 2002, pet. denied) ("Patent ambiguity of a contract may be considered for the first time on appeal from a motion for summary judgment."); *Donahue v. Bowles, Troy, Donahue, Johnson, Inc.*, 949 S.W.2d 746, 753 (Tex. App.—Dallas 1997) ("A court may conclude that a contract is ambiguous even in the absence of such a pleading by either party.").

doubtful or it is reasonably susceptible to more than one meaning. *Id.* at 393. A contract is not ambiguous if it can be given a certain or definite legal meaning or interpretation. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000).

Undefined terms in a contract are given their plain, generally accepted meaning. *See Epps v. Fowler*, 351 S.W.3d 862, 865-66 (Tex. 2011); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). The term "security interest," undefined in the settlement agreement, has a well-accepted common meaning: a property interest created by agreement or operation of law to secure performance of an obligation, especially the repayment of a debt. BLACK'S LAW DICTIONARY (9th ed. 2009). Reading the settlement agreement as a whole, we conclude the settlement agreement is not ambiguous. We overrule TST's third issue.

## B. Alter-ego

Much of TST's opening brief and summary judgment response asserted there was evidence of an alter ego relationship between Overveen and APP.[8] However, in response to questioning at oral argument, counsel for TST stated TST is not relying on alter ego as a theory to impute an alleged security interest against APP to Overveen. *See Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 550 (Tex. App.—Dallas 1997, writ denied) (appellate court may refuse to consider an issue conceded by a party at oral argument). Thus, any evidence relating to this alter ego argument fails to raise a genuine issue of any material fact.

## C. Declaratory Judgment and Counterclaim

TST's first and second issues challenge the trial court's summary judgment dismissing TST's declaratory judgment claim and granting judgment on Overveen's counterclaim. Because TST's defense to the counterclaim is based on its declaratory judgment claim, we discuss TST's

---

[8]In its reply brief, TST states that the alter ego evidence was presented in support of its contention that it was justified to maintain the status quo by withholding payments to Overveen in order to avoid double liability, not to support an ultimate determination of whether Overveen was APP's alter ego.

first and second issues together.

TST does not dispute that it did not timely make the payments due under the settlement agreement or that Overveen sent notice of default on January 13, 2011. It is also does not dispute it did not cure the default within fifteen days of receipt of the notice of default. Thus, the issue is whether TST's failure to cure in January 2011 is excused under the terms of the settlement agreement.[9]

The settlement agreement provides an excuse for payments not timely made as a result of the assertion by a party other than Arnold & Porter of a security interest in the proceeds of the Litigation. This provision requires at least: (1) a security interest (2) in the proceeds of The Litigation. TST contends the three judgments against APP meet these requirements—or at least there is a fact issue as to whether they meet these requirements. We disagree for two reasons: (1) a judgment is not a security interest under Texas law; and (2) the judgments have no relation to "the proceeds of the Litigation . . .."

### 1. Security Interest

TST states repeatedly that a judgment is a security interest.[10] However, it cites no authority from this or any other jurisdiction to support that contention. We conclude this argument is contrary to settled Texas law.

Under Texas law, "no lien is created by the mere rendition of a judgment." *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement*, 747 S.W.2d 926, 929 (Tex.

---

[9]The record indicates the Export-Import Bank judgment and writ of garnishment were resolved before Overveen sent notice of default in January 2011. TST's summary judgment evidence shows that TST was served with a third party discovery request regarding the JP Morgan Chase Bank judgment on May 14, 2012, after the time to cure the default had expired.

[10]For example, TST argued in its response to the motion for summary judgment that a judgment against APP was a security interest: "TST is basing the invocation of the exception clause on the judgment against APP, not the restraining notice. The U.S. Bank judgment from the New York state court is a security interest. . . . There is a judgment against APP in the State of New York. This judgment creates by operation of law a security interest in all proceeds owed to APP, whether the interest is perfected or not."

App.—Dallas 1988, writ denied); *Burton Lingo Co. v. Warren*, 45 S.W.2d 750, 751–52 (Tex. Civ. App.—Eastland 1931, writ ref'd). An unsecured money judgment is simply an adjudication between the plaintiff and defendant that the defendant owes the plaintiff some amount of money. Under the judgment, the plaintiff has no priority over any other claimant against the defendant. The plaintiff's "only superior position is against his judgment debtor, against whom he has litigated." *Fore v. United States*, 339 F.2d 70, 72 (5th Cir. 1964); *see also Schumann v. Breedlove & Bensey*, 983 S.W.2d 333, 334 (Tex. App.—Houston [1st Dist.] 1998, no pet.). Thus, any judgments against APP are nothing more than adjudications that APP owes money to the judgment plaintiffs.

To establish a lien on real property, a judgment creditor must comply with the statutory requirements for abstracting and recording the judgment in any county where the judgment debtor has real property. *See* TEX. PROP. CODE ANN. § 52.001; *Hoffman, McBryde & Co., P.C. v. Heyland*, 74 S.W.3d 906, 908–09 (Tex. App.—Dallas 2002, pet. denied). With regard to personal property, such as the settlement payments at issue here, a judgment does not give rise to a lien until a valid levy of execution against the personal property occurs. *See Williams v. Gillespie*, 346 S.W.3d 727, 731 (Tex. App.—Texarkana 2011, no pet.).

There is no evidence that any of the judgments were domesticated in Texas under the Uniform Enforcement of Foreign Judgments Act or under any other applicable law. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 35.001–.008; *see also* 28 U.S.C. § 1962 (federal court judgments in a state shall be a lien on property located in the state to the same extent and under the same conditions as a state court judgment of the state); 28 U.S.C. § 1963 (providing for registration of federal court judgments in other federal districts). Nor is there evidence of any procedures taken to establish the judgments as a lien against any person's property in Texas. *See* TEX. PROP. CODE ANN. § 52.001; TEX. R. CIV. P. 622.

While it can be argued that the writ of garnishment issued by a New York federal court in favor of the Export-Import Bank may have established a security interest, it would run only against the property of APP in the hands of TST at the time the writ was served. Furthermore, the summary judgment evidence indicates the garnishment writ was dissolved before Overveen sent notice of default and triggered the fifteen-day cure period.[11] Thus, the writ of garnishment did not serve to excuse TST's failure to cure in January 2011.

### 2. "Proceeds of the Litigation"

The parties devote much of their efforts to arguing whether APP is a party to the settlement agreement. But that is not the dispositive issue. The real question is whether a third party's assertion of a judgment against APP is "the assertion . . . of a security interest in the proceeds of the Litigation . . .."

The settlement agreement disposes of "The Litigation," defined by the settlement agreement as the lawsuit between TST and Overveen. The proceeds of "The Litigation" are the payments to be made by TST under the settlement agreement. Although the settlement agreement mentions APP, the only entities entitled to receive the settlement proceeds are Overveen and Arnold & Porter LLP.[12] Even if, as TST contends, APP is considered a party to the settlement agreement for some purpose, the agreement's express terms give APP no right to receive the settlement proceeds.[13] Thus as a matter of law, any claims, judgments, or liens

---

[11]The deposition testimony of TST's CEO indicates Overveen's notice of default was sent after the writ of garnishment was dissolved.

Overveen attached to its appendix on appeal documents, including an order dissolving the writ of garnishment, that do not appear in the appellate record and apparently were never presented to the trial court. We do not consider these documents. *See Drum v. Calhoun*, 299 S.W.3d 360, 374 (Tex. App.—Dallas 2009, pet. denied); *Perry v. Kroger Stores, Store No. 119*, 741 S.W.2d 533, 534 (Tex. App.—Dallas 1987, no writ) ("The attachment of documents as exhibits or appendices to briefs is not formal inclusion in the record on appeal and, thus, the documents cannot be considered.").

[12]Arnold & Porter LLP was paid and is not involved in this dispute.

[13]TST asserts on appeal that the judgments are also against certain paper mills in Indonesia and these mills are Overveen's assigns. There is no summary judgment evidence to support the assertion the mills are assigns of

asserted against APP are not, according to the terms of the settlement agreement, assertions "of a security interest in the proceeds of the Litigation."

TST does not dispute that Overveen is not a party to any of the three judgments. Therefore, Overveen is not a judgment debtor on those judgments and Overveen's property may not be applied to satisfy those judgments. *See Brown v. Zimmerman*, 160 S.W.3d 695, 703 (Tex. App.—Dallas 2005, no pet.) ("Generally a person is not bound by a judgment in a suit to which he was not a party."); *Gerjets v. Davila*, 116 S.W.3d 864, 869 (Tex. App.—Corpus Christi 2003, no pet.) (judgment against corporation did not permit judgment creditor to seek a turnover order against shareholder's personal assets). The judgments TST relies on could only reach the property of APP, not Overveen.

A judgment against a parent, subsidiary, affiliate, or former assignee is not a judgment against Overveen and such judgment cannot support the assertion of a security interest in Overveen's property, i.e., the proceeds of the settlement agreement.

### 3. Summary

The judgments TST's relies on are not security interests under Texas law. TST cannot rely on these judgments to establish that third parties are asserting security interests against the settlement proceeds payable to Overveen. We overrule TST's first and second issues.

CONCLUSION

TST states it is asking this Court to conclude that a third party who comes forward with a judgment against APP is thereby presenting a security interest in proceeds of The Litigation. There are several problems with this argument: (1) a judgment under Texas law does not create a security interest; (2) any security interest based on the judgment would be against property of

---

Overveen. The deposition testimony of Overveen's former officer was merely to the effect that Overveen collected accounts receivable between 2004 and 2010 and then paid its accounts payable to the paper mills. This evidence fails to raise a genuine issue of fact that Overveen assigned the settlement proceeds to the mills after executing the settlement agreement.

APP, not property of Overveen; and (3) the payments under the settlement agreement are not property of APP to which any such security interest could attach. Thus we conclude that the out-of-state judgments against APP are not assertions of a security interest in the proceeds of The Litigation as defined in the settlement agreement.

We conclude TST failed to raise a genuine issue of material fact on its declaratory judgment claim and affirmative defense to Overveen's counterclaim. Accordingly, the trial court did not err by granting summary judgment for Overveen. We affirm the trial court's judgment.

/Jim Moseley/
JIM MOSELEY
JUSTICE

121551F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

**JUDGMENT**

TST IMPRESO, INC., Appellant

No. 05-12-01551-CV          V.

ASIA PULP & PAPER TRADING (USA), INC. N/K/A OVERVEEN GENERAAL TRADING (USA), INC., Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC-11-00890.
Opinion delivered by Justice Moseley. Justices FitzGerald and Fillmore participating.

        In accordance with this Court's opinion of this date, the trial court's November 9, 2012 Modified Order on Overveen Generaal Trading (USA), Inc.'s Motion for Reconsideration and Rehearing of Defendant's Amended Motion for Summary Judgment is **AFFIRMED**.

        It is **ORDERED** that appellee ASIA PULP & PAPER TRADING (USA), INC. N/K/A OVERVEEN GENERAAL TRADING (USA), INC. recover its costs of this appeal from appellant TST IMPRESO, INC.


Judgment entered this 30th day of January, 2014.


                                    /Jim Moseley/
                                    _____
                                    JIM MOSELEY
                                    JUSTICE